Kenny HUBERT, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–08–00186–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 24, 2009.

Rehearing Overruled Nov. 23, 2009.

Discretionary Review Refused
March 31, 2010.

Patrick F. McCann, Law Offices of Patrick F. McCann, Houston, TX, for Appellant.

Jessica A. McDonald, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices BLAND, SHARP, and TAFT.[1]

## OPINION

JANE BLAND, Justice.

The State charged Kenny Hubert with possession of a controlled substance, phencyclidine, also known as PCP, weighing between four grams and two-hundred grams. *See* Tex. Health & Safety Code Ann. §§ 481.102(8) (Vernon 2003 & Supp. 2008), 481.115(d) (Vernon 2003). A jury found Hubert guilty. Hubert pleaded true to two enhancements, triggering a minimum sentence of twenty-five years' confinement. The jury assessed punishment at thirty years' confinement. Hubert appeals his conviction, contending that the evidence is legally and factually insufficient to support a finding of possession. We conclude that legally and factually sufficient evidence links Hubert to the drugs that the jury found him to have possessed and therefore affirm.

## Background

Based on a tip that it was the site of narcotics trade, Houston police officers and United States Marshals began surveillance on a house on Ponnel Street in northwest Houston. Officers observed a tan Ford Taurus parked in the driveway behind the house. Officers watched several people approach the house and stay for short periods of time. That afternoon, Kenny Hubert and his girlfriend, Florenda Johnson, left in the Taurus. Police stopped them shortly thereafter. Hubert told the officers his name was Christopher Jackson, and he provided them with a Texas driver's license bearing that name, but the picture was of a different person. Officers seized a set of keys from Hubert.

Officers asked to search the Ponnel Street house. Hubert declined to give them permission. The officers took Hubert into custody. Later that afternoon, officers obtained a search warrant for the Ponnel Street house.

One of the officers testified that, based on his previous experience, the house had the characteristics of a drug house: it was sparsely furnished and few personal belongings were present. Upon entering the house, officers noted that the house had a strong odor of both fresh and burned marijuana. In the kitchen, they discovered a bag of marijuana, a vanilla extract bottle filled with liquid, and three other small glass vials. One officer testified that vanilla extract bottles are commonly used for storing PCP, which is then poured into the smaller vials for sale and distribution. The bottle found in the kitchen contained 3.17 grams of PCP. In a kitchen drawer, officers also found a photo of a pile of hundred dollar bills, commonly referred to as a "bragging photo," because a narcotics dealer may use it in bragging about the proceeds of a sale.

Officers continued their search and recovered more evidence from the bedrooms. In the left rear bedroom, officers discovered a scale used to weigh narcotics and two additional extract bottles, containing traces of PCP, on the floor. In the closet, officers found one extract bottle containing 6.85 grams of PCP, a loaded firearm, and paperwork containing Kenny Hubert's name. The PCP and paperwork were next to each other on a middle shelf of the closet, and the firearm was on the top shelf. The paperwork consisted of Kenny Hubert's bank statements from April and May 2007, a certificate for Hubert's completion of an industrial sewing program, and Hubert's birth certificate. Police

1. Justice Tim Taft, who retired from the First Court of Appeals on June 1, 2009, continues to sit by assignment for the disposition of this case, which was submitted on April 14, 2009.

found no other documents in that bedroom. In the right rear bedroom, officers found a shoebox lid containing marijuana and cigar pieces, a Western Union receipt that indicated that Kenny Hubert had sent money to his brother Eric Hubert, a ledger of narcotics sales, and a Houston Municipal Court citation dated June 30, 2007, for Hubert's other brother, DeMarcus Hubert. Kenny Hubert's address listed on the Western Union receipt was on Marcolin Street, not Ponnel Street. The receipt was dated approximately one month before the search.

Officers also searched the carport area at the rear of the house and found two parked vehicles. Inside one, officers discovered another vanilla extract bottle containing 23.81 grams of PCP and several lids to vials used for PCP distribution. Officers looked for paperwork indicating the vehicle's ownership, such as registration or insurance papers, but found only a mobile phone bill in Kenny Hubert's name in the glove compartment with a different address than Ponnel Street. Officers later learned that neither vehicle was registered to any of the Huberts. When the officers completed their search, they secured the house by locking it with one of the keys they obtained from Kenny Hubert during his arrest.

Florenda Johnson testified that Hubert lived with her on Marcolin Street in north Houston from March or April until the end of June 2007. Johnson testified that before moving to her home, Hubert had been incarcerated, lived in a halfway house, and then, after his release, spent a week with his grandmother. She testified that he moved out in June because he was on the run from an outstanding arrest warrant. On cross-examination, the prosecutor asked Johnson if she had accepted a reward for tipping off the United States Marshals that they could find Hubert on Ponnel Street. Johnson denied having assisted the authorities locate Hubert.

Deputy Marshal M. Santiago testified that he contacted Johnson about helping him locate Kenny Hubert. A week later, Johnson called Santiago and agreed to help. On the day of Hubert's arrest, Johnson called Santiago and informed him that he would find Hubert at the Ponnel Street house, and that he was driving a tan Ford Taurus. After Hubert was arrested, Johnson called the Marshals' office to inquire about receiving a reward for her assistance in locating Hubert. She received her reward in August 2007, complying with the requirements that she provide identification, a photo, fingerprints, and her signature.

## Discussion

■ On appeal, Hubert contends that the evidence is legally and factually insufficient to support his conviction. He argues that the State presented no evidence of actual possession and no forensic evidence linking him to the crime. Hubert argues that he was not the owner of the house, and the State presented no testimony that he lived at the Ponnel Street house or operated a business out of it. Further, the bills found with Hubert's name on them listed two different addresses, neither of which was the Ponnel Street house. He contends that two other people were in the house when he was arrested and that the drugs were concealed, so there is no indication that he even knew drugs were present in the house. On the other hand, Hubert was in the house and had a key to it; he lied to the police about his identity; his personal papers, including his birth certificate, were found next to the drugs; and the house had characteristics of a stash house used for illegal drug trade.

In evaluating the legal sufficiency of the evidence, we view the evidence in the light

most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim.App.2005). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this was the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim.App.1991).

In evaluating factual sufficiency, we consider all the evidence in a neutral light to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Watson v. State*, 204 S.W.3d 404, 414 (Tex.Crim.App.2006). We set the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). Under the first prong of *Johnson*, we cannot conclude that a verdict is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Watson*, 204 S.W.3d at 417. Before finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson*, we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* We must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *See Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim.App.2003).

A person commits second-degree felony possession of a controlled substance if he knowingly or intentionally possesses the controlled substance—in this case, PCP—in an amount greater than four grams but less than two-hundred grams. TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (Vernon 2003). The State must show that the accused (1) exercised care, custody, control, or management over the contraband and (2) knew the matter possessed was contraband. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon 2003 & Supp. 2008); *Pena v. State*, 251 S.W.3d 601, 606 (Tex.App.-Houston [1st Dist] 2007, pet. ref'd).

If, as here, the accused does not exclusively possess the place where the contraband is found, then independent facts and circumstances must link him to the drugs. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex.Crim.App.2005); *Batiste v. State*, 217 S.W.3d 74, 79–80 (Tex. App.-Houston [1st Dist.] 2006, no pet.). Proof of a link between the accused and the contraband is mainly needed to establish knowledge or intent. *Roberson v. State*, 80 S.W.3d 730, 735 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). It is not sufficient to show the defendant was merely present in the vicinity of the controlled substance. *Batiste*, 217 S.W.3d at 80. Hubert relies on *Vargas v. State*, 883 S.W.2d 256, 263 (Tex.App.-Corpus Christi 1994, pet. ref'd), for the proposition that, since the PCP was secreted, the State's evidence must prove that Hubert could have known about its presence. In fact, the State must show not only that Hubert could have known about the drugs, but also that he exercised care, custody, management, or control over those drugs. Whether direct or circumstantial, the evidence must establish that the defendant's connection with the drug is more than fortuitous. *Evans v. State*, 202 S.W.3d 158, 161 (Tex.Crim.

App.2006). Texas courts have set forth a non-exclusive list of possible links that can be sufficient, either alone or in combination, to establish a person's possession of contraband. *Id.* at 162 n. 12. Each case is examined on its own facts, and a factor that contributes to the sufficiency of the evidence in one case may be of little or no value in a different case. *Roberson,* 80 S.W.3d at 736. The number of affirmative links is not as important as the logical force that they collectively create. *Batiste,* 217 S.W.3d at 80. We need not consider linking factors that are absent from the evidence. *Id.*

Viewed in a light most favorable to the verdict, we conclude that the evidence is legally sufficient to link Hubert to the PCP. Officers observed Hubert leaving the Ponnel Street house, and he had a key to the house in his possession. *See Coleman v. State,* 113 S.W.3d 496, 501 (Tex.App.-Houston [1st Dist.] 2003) (holding that appellant having a key to the house is a link), *aff'd,* 145 S.W.3d 649 (Tex.Crim.App.2004). He provided officers with false identification when he was arrested. *See Hargrove v. State,* 211 S.W.3d 379, 387 (Tex.App.-San Antonio 2006, pet. ref'd) (holding that giving false identification information indicates a consciousness of guilt). When officers entered the house, they detected a strong odor of marijuana, and the house had other characteristics of a drug house. Officers discovered PCP in an enclosed space—a bedroom closet—on a shelf next to Hubert's birth certificate, bank statements, and his certificate of completion for an industrial sewing course. *See Nhem v. State,* 129 S.W.3d 696, 700 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (holding that the appellant's driver's license and mobile phone bills in close proximity to the controlled substance were sufficient to link him to the controlled substance); *Coleman,* 113 S.W.3d at 501 (holding that appellant's college identification found in a

safe with PCP linked him to the drugs). A scale for weighing drugs was also out in plain view in the bedroom where officers found PCP. *See Hargrove,* 211 S.W.3d at 386 (holding that digital scales for weighing drugs in plain view constitute a link). Also, in the vehicle parked in the carport, police found PCP and Hubert's mobile phone bill with a due date two weeks before the search. *See id.* We conclude that the logical force from these links is sufficient for a rational jury to have concluded beyond a reasonable doubt that Hubert exercised care, custody, control, or management over the PCP in the closet and the vehicle, but not the PCP in the kitchen. The weight of the PCP from the closet and the PCP from the vehicle each independently constitute an amount between four grams and two-hundred grams. We hold that the evidence presented at trial is legally sufficient to sustain the conviction.

■ Considering all of the evidence in a neutral light, we also conclude that the evidence was factually sufficient to sustain the jury's verdict. Hubert alleges that the following facts undermine the verdict: documents in the house showed his address to be elsewhere, and no one testified that he lived on Ponnel Street; his fingerprints were not found on any of the PCP bottles; no one observed any drug deals taking place; no accomplices testified against him; Hubert never confessed to any crime; and the PCP was not in plain view but was located in the closet and the car, indicating that Hubert may not have known of its presence. Even considering these factors, the great weight and preponderance of the evidence does not contradict the jury's verdict. At most, they indicate that Hubert may not have had exclusive control over the PCP. *See Nhem,* 129 S.W.3d at 701. Possession of a controlled substance, however, need not be exclusive to constitute a

violation of law. *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App.1988). The evidence of Hubert's personal documents next to the PCP in the closet and the car, the drug paraphernalia in plain view, and the fact that Hubert was arrested after leaving the house with a key to it in his possession all supports a finding that Hubert possessed the PCP. Moreover, Johnson told Deputy Santiago that Kenny Hubert could be found at the Ponnel Street house, and police arrested him after they saw him leave the house. Accordingly, we hold that the evidence is factually sufficient to sustain the jury's verdict.

Hubert relies on *Denbow v. State*, 837 S.W.2d 235, 236–38 (Tex.App.-Dallas 1992, pet. ref'd), *Jenkins v. State*, 76 S.W.3d 709, 717–19 (Tex.App.-Corpus Christi 2002, pet. ref'd), and *Dixon v. State*, 918 S.W.2d 678, 681–82 (Tex.App.-Beaumont 1996, no pet.), as analogous cases where the evidence was legally and factually insufficient. These cases are distinguishable from Hubert's situation. In *Denbow*, when the defendant was stopped in a parking lot by a police officer on a suspicion that the car was stolen, he jumped out of the car and fled from the officer. *Denbow*, 837 S.W.2d at 236. The officer discovered a right-hand glove and a bottle of methamphetamine a few feet from the car's bumper, and the defendant had the left-hand glove when he was apprehended. *Id.* The court nevertheless found the evidence legally and factually insufficient because the bottle of methamphetamine was found in an open public space, a parking lot, and the officer did not observe whether the bottle was present before the defendant arrived on the scene. *Id.* at 238. In both *Jenkins* and *Dixon*, police found drugs in the trunks of cars in which the defendants were passengers. *Jenkins*, 76 S.W.3d at 717; *Dixon*, 918 S.W.2d at 681. But neither defendant owned the car, nor was he driving it. *Jenkins*, 76 S.W.3d at 717; *Dixon*, 918 S.W.2d

at 681. Neither defendant had any possessions in the trunk of the car to connect him to the drugs, nor did he possess any drugs or paraphernalia on his person. *Jenkins*, 76 S.W.3d at 717; *Dixon*, 918 S.W.2d at 681. Neither defendant indicated a consciousness of guilt or attempted to flee from the police or made any incriminating statements linking himself to the drugs. *Jenkins*, 76 S.W.3d at 717; *Dixon*, 918 S.W.2d at 681. In contrast, the officers in this case found Hubert's personal belongings near both the bottle of PCP in the closet and the bottle of PCP in the car. Drug paraphernalia was in plain view throughout the house, and Hubert exhibited a consciousness of guilt by giving officers another person's identification.

## Conclusion

We hold that the evidence presented is both legally and factually sufficient to support the jury's verdict that Hubert possessed between four grams and two-hundred grams of PCP. We therefore affirm the judgment of the trial court.

Justice SHARP, concurring in part and dissenting in part.

JIM SHARP, Justice, concurring and dissenting.

Charged with possession of a firearm by a felon, appellant was acquitted. Charged with possession of the drugs found within inches of that same firearm, he was convicted. That a person can be convicted of possession of a controlled substance on such tenuous connections is disturbing, and our jurisprudence should not abide such a result.

The jury determined that appellant's recent presence at the house in which a gun and drugs were found—a house that the evidence suggested was *not his*, but his *brothers'*—coupled with the presence of (1)

a medical statement and two bank statements (all listing other addresses than where the gun and drugs were found), a 2002 Lamar College course certificate, and a birth certificate, found in the corner of a closet shelf in the vicinity of the gun and vial of drugs, and (2) a cell phone bill and wire transfer receipt found in other parts of the house (also listing other addresses), were sufficient "links" to find appellant guilty beyond a reasonable doubt of drug possession, but not the firearm possession.

I recognize that when the evidence at trial is viewed in the light most favorable to the verdict, and resolving all inferences in favor of the verdict, a jury could have found that there were sufficient links between appellant and the controlled substance to find that he knowingly possessed the PCP.

However, viewing the evidence at trial in a *neutral* light, the record shows that:

(1) there was *no* testimony that appellant actually resided in the house and he never admitted to living at that address;

(2) there was testimony that appellant had quite recently lived elsewhere (with his girlfriend) and *all* documents found at the house with his name listed other addresses (his grandmother's or his girlfriend's);

(3) there *was* evidence that his brothers were living in the house, and drugs and paraphernalia were found in a room in which personal items belonging to one of his brothers were found;

(4) incriminating forensic evidence in the case was limited to a single fingerprint lifted from a vial of drugs in the kitchen, which print belonged to appellant's brother, not appellant;

(5) there was testimony that the car in which some of the PCP was found was registered to someone other than appellant, and there was no evidence that appellant ever actually used that car;

and, most significantly,

(6) **two** *other people* were seen leaving the area of the residence between the time appellant left and the police executed the warrant, searched the house, and found the drugs and gun. One was seen actually leaving the house, and the other was seen walking down the driveway, the latter being seen as late as 3:30 p.m., approximately two and one-half hours *after* appellant Hubert had driven away and had been arrested minutes thereafter.

In light of these facts, I would hold that evidence at trial demonstrating links between appellant and the drugs is so weak that the verdict is clearly wrong and manifestly unjust.

That *someone* with access to that house possessed drugs and, possibly, was even dealing drugs, is not sufficient to convict *appellant* of such crimes. The evidence in the record linking *appellant* to the PCP is simply not enough to establish possession. The State proved no more than a mere probability or strong suspicion, if that, that appellant possessed the PCP. "Proof amounting to only strong suspicion or mere probability will not suffice" to support a conviction for possession. *See Roberson v. State*, 80 S.W.3d 730, 742 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd). Possession means more than merely "being where the action is." *Meeks v. State*, 692 S.W.2d 504, 511 (Tex.Crim.App.1985) (quoting *Wilkes v. State*, 572 S.W.2d 538, 540 (Tex.Crim.App.1978)).

I, therefore, concur with the portion of the majority's opinion holding that the evidence is legally sufficient, but dissent to the portion of the opinion holding that the

evidence is factually sufficient. I would hold that the evidence is factually insufficient to link appellant to the PCP, reverse appellant's conviction, and remand this cause for a new trial.