**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-11-00481-CR**
_____

**DAROLD COLEMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 09-07669**

**MEMORANDUM OPINION**

Claiming that the evidence at his trial showed that the marijuana found in the trunk of a rental car he was driving belonged to a passenger, Darold Coleman[1] appeals, arguing the evidence is insufficient to support his conviction for possession. *See* Tex. Health & Safety Code Ann. § 481.121(b)(5) (West 2010) (making possession of more than fifty pounds but less than two thousand pounds of marijuana a second degree felony). We affirm the trial court's judgment.

---

[1]The record reflects that the defendant is also known as Darold David Coleman.

Coleman raises two issues in his appeal, both of which challenge the sufficiency of the evidence supporting his conviction. Although one of his issues, issue two, challenges the trial court's decision to deny his motion for instructed verdict, that too presents a challenge to the legal sufficiency of the evidence. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990) ("A challenge to the trial judge's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction.").

We review a challenge to the legal sufficiency of the evidence in the light most favorable to the verdict to determine if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). We apply the same standard to challenges to a trial court's decision denying a motion for instructed verdict. *See Williams*, 937 S.W.2d at 482; *Madden*, 799 S.W.2d at 686. In reviewing the evidence in response to legal sufficiency challenges, appeals courts allow the jury deference, as the jury is responsible for resolving any conflicts in the testimony, it weighs the evidence, and it is proper for the jury to draw reasonable inferences from the evidence presented to it. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

To support a conviction for unlawful possession of marijuana, the State must prove the accused knowingly or intentionally exercised actual care, custody, control, or

2

management over the marijuana. *See* Tex. Health & Safety Code Ann. §§ 481.002(38), 481.121(a) (West 2010); *see also* Tex. Penal Code Ann. § 6.03(a), (b) (West 2011). Generally, a person's mere presence at the location where drugs are found is not enough, by itself, to establish actual care, custody, or control of the drugs. *See Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). However, the State is not required to prove that the defendant was in exclusive possession of the place where the contraband is found. *See McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985); *State v. Derrow*, 981 S.W.2d 776, 779 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). When the defendant is not in exclusive possession of the premises where the police found the contraband, additional independent facts and circumstances can affirmatively link the accused to the contraband. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)). Having evidence affirmatively linking the accused to the contraband requires that the evidence— whether direct or circumstantial—establish that the defendant's connection with the drugs was more than fortuitous. *Evans*, 202 S.W.3d at 161.

In considering whether the evidence sufficiently proved possession, courts consider links, including but not limited to:

- whether the defendant was present when the search was conducted,
- whether the contraband was in plain view,
- whether the defendant was in proximity to and had access to the drugs,

- whether the defendant was under the influence of drugs when arrested,

- whether the defendant possessed other contraband or narcotics when arrested,

- whether the defendant made incriminating statements when arrested,

- whether the defendant attempted to flee,

- whether the defendant made furtive gestures,

- whether there was an odor of contraband,

- whether other contraband or drug paraphernalia were present,

- whether the defendant owned or had the right to possess the place where the drugs were found,

- whether the place where the drugs were found was enclosed,

- whether the defendant was found with a large amount of cash, and

- whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* at 162 n.12; *see also Nixon v. State*, 928 S.W.2d 212, 215 (Tex. App.—Beaumont 1996, no pet.) (explaining that whether "the occupants of the premises gave conflicting statements about relevant matters" is an affirmative link factor to consider).

The State is not required to prove all of these links are present; instead, the "number of . . . links is not as important as the logical force that they collectively create." *Hubert v. State*, 312 S.W.3d 687, 691 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Additionally, "[t]he absence of various affirmative links does not constitute evidence of

innocence to be weighed against the affirmative links present." *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

In mid-December 2008, around 2:00 a.m., Beaumont Police Department Officer Clint Wier and Jefferson County Sheriff's Deputy Sergeant Trish Molfino were patrolling Interstate 10. The driver of a car passed them, suddenly cut in front of Wier, and decelerated. Wier stopped the car.

After stopping the car, Wier noticed that there were three occupants in the car, two males and a female. According to Wier, a male passenger, who was seated in the backseat, appeared to be sleeping. After approaching the driver's window, Wier asked for Coleman's driver's license, and Coleman produced a valid New Jersey license. Coleman told Wier that his license had previously been suspended and that it was reinstated two days before.

According to Wier, Coleman told him he had driven from New Jersey to pick up his friend, James Thomas, the backseat passenger. Coleman also told Wier that Thomas was from New Jersey or Pennsylvania. Coleman said that Thomas had been visiting his girlfriend in Houston for about a week when he asked Coleman to come get him. Coleman indicated that he and the female travelling in the front seat, Shakiera Stevens, were just friends. Wier noticed that Coleman claimed to have driven to Houston on December 16: however, Coleman's paperwork showed that the State of New Jersey had reinstated Coleman's license December 17. Wier also learned that Coleman was not

5

listed as an authorized driver on the rental car, and that the car was rented in New Jersey. Although Coleman told Wier that none of the people in the car were on the rental agreement, the agreement identified Thomas as an authorized driver.

Wier then interviewed Stevens separately. According to Wier, she provided a different account about why the three of them were together. Wier testified that Stevens told him that the three of them drove from New Jersey to Houston to bring clothes to Thomas's brother, who was in college. Wier also interviewed Thomas separately, and Thomas gave Wier yet another account about why the three of them were together. Thomas told Wier that they were in Texas visiting his uncle.

A recording of the stop was admitted into evidence. The recording shows that Wier questioned each of the occupants of the car separately, and the recording is generally consistent with Wier's testimony.

After interviewing the occupants, Wier asked whether he could search the car. When Wier was not given consent to search the car, Wier requested that the police send a drug dog to assist in the investigation. Approximately thirty minutes later, the dog and a K9 officer arrived; after the K9 officer told Wier that the dog had alerted to the car, Wier opened the car's trunk. According to Wier, upon opening the trunk, he smelled a "slight odor" of marijuana and saw "duct tape and cellophane wrapped packages, blocks, that [he] believed" to be marijuana. In addition to the 150 plus pounds of marijuana found in the trunk of the car, Wier discovered a roll of duct tape, a box of trash bags, Clorox

wipes, and a spray deodorizer. Based on his training and experience, Wier explained that "subjects will often use duct tape to wrap the packages of narcotics to hold it, Clorox wipes to wipe down the packaging of fingerprints/attempt to get odor off the packaging, and [the spray deodorizer] to spray to try to prevent us from detecting it." On cross-examination, Wier explained that no one admitted having placed the contraband in the car's trunk. Wier acknowledged that none of the passengers, including Coleman, appeared intoxicated.

Sergeant Molfino also testified at the trial. She described the wipes, tape, bags, and deodorizer as "[m]asking materials." She felt that Coleman seemed unusually nervous. Molfino added that she thought it was "[e]xtremely" odd that Coleman had driven from New Jersey to Texas in what she estimated to be a straight, non-stop, twenty-five hour drive.

Officer Daniel Valdez, the K9 officer who brought the drug sniffing dog to the stop, testified during the trial. He confirmed that the dog alerted when it sniffed the car. According to Valdez, he could smell marijuana when the trunk was opened but not when it was closed.

Thomas, who had been travelling in the backseat before the stop, was the sole witness who testified for Coleman during trial. According to Thomas, all of the marijuana in the trunk of the car belonged to him. Thomas also testified that he pled guilty and received a seven-year sentence for possessing the marijuana found in the car's trunk.

According to Thomas, he came to Houston for the purpose of purchasing marijuana. Thomas said that he knew Coleman because their girlfriends were close friends. Thomas's girlfriend rented the car in New Jersey, listing Thomas as an authorized driver. According to Thomas, Coleman wanted to go to Houston to see a girl Coleman knew. Thomas testified that he asked Stevens to come on the trip to help drive, and he knew she had never been to Texas. After arriving in Houston, they checked into a motel. Thomas then left Coleman and Stevens at the motel, and he went to another location approximately twenty minutes away, where he purchased the marijuana at issue. After purchasing the marijuana, Thomas testified that he concealed it in the trunk, and that neither Coleman nor Stevens knew about it. According to Thomas, Coleman did not know that Thomas intended to purchase marijuana while in Houston, why Thomas left the motel, or that there were drugs in the car.

On cross-examination, Thomas admitted that he had a number of other drug-related convictions. Although Thomas testified that he was taking medication for an arm injury that interfered with his driving, he stated that he wrapped and packaged the marijuana alone. Additionally, Thomas acknowledged that Stevens also pled guilty to possessing the marijuana in the car; however, he asserted that she did so because the State scared her into pleading guilty.

On appeal, Coleman claims that there was "absolutely nothing to affirmatively connect" him to the marijuana. With respect to Coleman's arguments, and because the

8

jury found against him at trial, we view the evidence in the light most favorable to the verdict. *See Jackson*, 443 U.S at 319. In that light, the jury could have chosen to reject Thomas's testimony, and it could conclude that Thomas, who had already pled guilty to possession, was trying to prevent his friend from also being convicted of possession. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We conclude that the jury was not required to accept Thomas's claim that he solely possessed the drugs.

Affirmative links also tie Coleman to the drugs. He was driving the car, and it is undisputed that marijuana was found in the car's trunk. The jury could have believed that because of Thomas's arm injury, the circumstances made it unlikely that he could wrap and load the marijuana by himself. Notably, each of the occupants of the car gave conflicting stories, a circumstance tending to indicate all of the stories were fabricated to cover up the true reason they were travelling together. Additionally, the fact that Coleman claimed he came to Houston to pick up Thomas, but Thomas indicated in his testimony that the three of them drove to Texas from New Jersey, allowed the jury to conclude that Coleman lied to police about his true purpose for going to Houston. Instead, the jury could reasonably infer that all of the occupants in the car knew that the purpose of the trip was to purchase marijuana in Houston.

The logical force of the evidence linking Coleman to the marijuana found in the car's trunk makes his connection to the marijuana more than fortuitous. *See Evans*, 202 S.W.3d at 161; *Hubert*, 312 S.W.3d at 691. Having reviewed all the evidence, we

9

conclude that a rational trier of fact could have found beyond a reasonable doubt that Coleman was guilty of possession. *See Jackson*, 443 U.S at 319. These same affirmative links are sufficient to support the trial court's decision denying Coleman's request for an instructed verdict. *See Williams*, 937 S.W.2d at 482. Accordingly, we overrule Coleman's issues, and we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on June 27, 2012
Opinion Delivered December 19, 2012
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.