**Opinion issued July 16, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-12-00928-CR

———————————————

**DANIEL BENARD PHILLIPS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1335902**

**MEMORANDUM OPINION**

Daniel Benard Phillips was convicted by a jury of possession of cocaine, more than four grams but less than two hundred grams, with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010). The jury assessed punishment of fifteen years' confinement. In two issues, Phillips

contends that the evidence is insufficient to show he possessed the cocaine and that the trial court erred by refusing to require the State to disclose the identity of its confidential informant. We affirm.

## Background

Officer Castro of the Houston Police Department's narcotics division used a confidential informant to conduct a "controlled buy" of narcotics at Napoleon Wooten's home. Within forty-eight hours of the controlled buy, Officer Castro applied for a search warrant. In his affidavit supporting the search warrant, Castro included the information the informant had given him about the sellers. The informant described two men who sold him crack cocaine. The first, nicknamed "Tony," was a black male, 50 to 55 years of age, 5'10" to 5'11" tall, and 200 to 220 pounds in weight. The other man, nicknamed "Woo," was a black male, 25 to 30 years of age, 5'10" to 6' tall, and 240 to 250 pounds in weight. According to Officer Castro's affidavit, "Tony" and "Woo" were a father-son team. Officer Castro also testified at trial that he believed "Tony" was Napoleon Wooten and "Woo" was Daniel Phillips.

Officer Castro conducted surveillance of the house where the controlled buy occurred. Around 5:00 P.M. on February 3, 2012, Officer Castro parked his truck down the street from the house. He observed the house for about twenty minutes.

2

During that time, he saw Phillips come out of the house and sit in a chair in front of the house. Two people approached Phillips, and Officer Castro observed "a hand-to-hand exchange with [Phillips] and the unknown individuals." Officer Castro did not see any drugs or money exchanged, but, based on his training and experience, he thought it was a narcotics transaction.

At about 9:00 p.m. that evening, Officer Chapman began his surveillance of the house. Officer Chapman was providing reports to Officer Castro and his team, who were preparing to execute the search warrant. Officer Chapman saw Phillips participating in a barbecue outside the apartment, but saw no evidence of any narcotics transactions.

At approximately 9:30, Officer Castro and his team executed the search warrant. They quietly approached the front door, but when they were preparing to remove the "burglar bars," Phillips, who was seated on a couch next to Wooten, saw Officer Castro. Phillips stood up and ran towards the back of the home, yelling "Laws, laws!" By the time Officer Castro and his team entered the house, Phillips had returned to the living room. He cooperated with the officers.

Officer Castro then searched the home. Under the couch where Phillips and Wooten had been sitting, Castro found a loaded pistol, 20.9 grams of crack cocaine on a plate, and a scale with cocaine residue. The pistol was directly under where

3

Wooten had been sitting, but the plate with the crack cocaine on it was under the couch between Phillips and Wooten. In one of the bedrooms, officers found two debit cards in Phillips's name, as well as men's and women's clothing. In the hallway closet, police found $1485 in a jacket pocket.

During the search, Whitney White, Wooten's daughter, arrived. She lived there with Wooten, and referred to herself as Phillips's wife. Officer Castro testified that White told him Phillips and Wooten had been dealing drugs out of the home. Officer Castro also stated that Wooten admitted that Wooten and Phillips had been dealing crack from the house.

About two weeks later, officers conducted another controlled buy at Wooten's home, using the same confidential informant. This time, the informant indicated that "Daniel" had sold him drugs. However, when police executed the second search warrant, they found White and Bob Spiller. White was charged with possession of cocaine, and Spiller with possession of marijuana.

Phillips's defensive theory at trial was that Spiller was nicknamed "Tony" and was, in fact, the man from whom the confidential informant purchased crack cocaine during the first controlled buy. White testified that Phillips did not live with her and Wooten. She stated that Spiller lived with them. She explained that Spiller's nickname was "Tony," which was slang for cocaine, and that he and her

4

father dealt drugs out of the house, while Phillips did not. White also denied having told Officer Castro that Phillips dealt drugs with her father.

Wooten also testified for Phillips. Wooten agreed that Phillips did not live at the home and did not deal drugs, but he denied that Spiller lived in the home. In addition to being impeached with Officer Castro's testimony about Wooten's oral admission that he and Phillips had been dealing crack out of the house, Wooten was impeached with his judicial confession from his possession with intent to distribute case, in which he acknowledged he and Phillips jointly possessed the crack cocaine.

Phillips also presented evidence that he weighed approximately 180 to 190 pounds, much less than the 240 to 250 pounds that the informant estimated "Woo" weighed. Phillips asserted that the informant's description was a better description of Spiller than of Phillips. Phillips also elicited testimony from Officer Castro that the informant was never shown any photographs of Phillips or Spiller to verify who had sold the crack cocaine. Officer Castro also testified that Phillips seemed surprised by the discovery of the crack cocaine, but Wooten did not.

The jury found Phillips guilty and assessed his punishment at fifteen years' confinement. Phillips appeals.

5

**Sufficiency of the Evidence**

In his first issue, Phillips contends that the evidence was insufficient to support his conviction because the evidence presented at trial failed to establish that he knowingly possessed the cocaine. Phillips argues that the State's evidence, which he contends "weakly tie[d]" him to the scene, was not strong enough to support his conviction for possession with intent to distribute.

**A. Standard of Review**

"[E]vidence is insufficient to support a conviction if considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt." *Gonzalez v. State*, 337 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Gonzalez*, 337 S.W.3d at 479. The sufficiency of the evidence is measured by the elements of the offense as defined in a hypothetically correct jury charge, which is

one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *Gonzalez*, 337 S.W.3d at 479.

An appellate court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). When the record supports conflicting inferences, an appellate court presumes that the factfinder resolved the conflicts in favor of the verdict and defers to that resolution. *Id.* (citing *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793). "An appellate court likewise defers to the factfinder's evaluation of the credibility of the evidence and the weight to give the evidence." *Gonzalez*, 337 S.W.3d at 479. A court treats direct and circumstantial evidence equally: circumstantial evidence can be as probative as direct evidence, and circumstantial

7

evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778 (citing *Hooper*, 214 S.W.3d at 13).

**B.  Applicable Law**

To demonstrate possession of cocaine with intent to deliver, the State is required to show that: (1) appellant knowingly or intentionally, (2) possessed, (3) cocaine, (4) in an amount of greater than four but less than two hundred grams, (5) with the intent to deliver the cocaine. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d). In order to prove unlawful possession, the State must present evidence that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).

Possession need not be exclusive. *Wiley v. State*, 388 S.W.3d 807, 813 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). When the accused is not in exclusive possession of the place where the contraband is found, then additional, independent facts and circumstances must link the defendant to the contraband in such a way that it can reasonably be concluded that the defendant had knowledge of the contraband and exercised control over it. *Kibble v. State*, 340 S.W.3d 14, 18 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Roberts v. State*, 321 S.W.3d 545, 549 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). The evidence, whether direct

or circumstantial, "must establish, to the requisite level of confidence, that the accused's connection with the drugs was more than just fortuitous." *Poindexter*, 153 S.W.3d at 405–06 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). "This rule simply [states] the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house." *Id.* at 406. The accused's presence at the scene where contraband is found is insufficient, by itself, to establish possession. *Roberts*, 321 S.W.3d at 549 (citing *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006)). However, presence or proximity when combined with other direct or circumstantial evidence may be sufficient to establish the elements of possession beyond a reasonable doubt. *Id.*

Links that may establish knowing possession include: (1) the defendant's presence when a search is conducted; (2) whether the substance was in plain view; (3) the defendant's proximity to and the accessibility of the substance; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether

9

there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the substance was found; (12) whether the place where the substance was found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162, n.12. The "number of . . . links proven is not as important as the logical force that they collectively create." *Wiley*, 388 S.W.3d at 814 (quoting *Hubert v. State*, 312 S.W.3d 687, 691 (Tex. App.— Houston [1st Dist.] 2009, pet. ref'd)). The absence of various links does not constitute evidence of innocence to be weighed against the links that are present. *Id.* (quoting *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd)).

## C.    Analysis

Viewed in the light most favorable to the verdict, we conclude that the evidence supports the jury's finding that Phillips possessed the crack cocaine. Officer Castro testified that both White and Wooten told him that Phillips and Wooten had been dealing drugs out of the home. And, although he testified differently at Phillips's trial, Wooten signed a confession and stipulation as part of a guilty plea that stated he possessed the cocaine "along with Daniel Phillips." On

10

appeal, Phillips attacks the credibility of these statements, but credibility determinations are the sole province of the jury. *See Gonzalez*, 337 S.W.3d at 479.

Other evidence also supports the jury's finding. Phillips was present when the search was conducted. *See Evans*, 202 S.W.3d at 162, n.12. The cocaine was found in close proximity to Phillips, in a location accessible by him. *See id.* Other contraband—the digital scale with cocaine residue on it—also was under the couch with the cocaine and accessible by Phillips. *See id.* And, Phillips's conduct upon seeing Officer Castro demonstrated a consciousness of guilt. *See id.*

Viewing the evidence in the light most favorable to the jury's verdict, and considering the logical force of all the evidence, we conclude that sufficient evidence supports the finding that Phillips exercised care, custody, or control over the cocaine.[1] *See Villarreal v. State*, No. 04-02-00242-CR, 2003 WL 1824970, at *2 (Tex. App.—San Antonio Apr. 9, 2003, no pet.) (mem. op., not designated for publication) (finding evidence sufficient to show more than "mere presence" and establish possession where drugs were equally accessible to appellant and other passenger in truck, appellant attempted to leave scene when he noticed officers,

---

[1]     Phillips argues that there was no evidence presented of several of the links. However, the absence of evidence of some of the affirmative links is not evidence of innocence that we weigh against the links that are present. *See Evans*, 202 S.W.3d at 162; *Wiley*, 388 S.W.3d at 814.

11

drug paraphernalia was found in appellant's residence, and appellant's daughter stated appellant and other passenger were returning from purchasing drugs). We therefore hold that the evidence is sufficient to support Phillips's conviction for possession of a controlled substance with intent to deliver.

We overrule Phillips's first issue.

**Motion to Disclose Confidential Informant**

In his second issue, Phillips contends that the trial court abused its discretion in denying his motion to require the State to disclose the identity of the confidential informant. We review a trial court's denial of a motion to disclose a confidential informant under an abuse of discretion standard. *Blake v. State*, 125 S.W.3d 717, 728 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Taylor v. State*, 604 S.W.2d 175, 179 (Tex. Crim. App. 1980)). A trial court does not abuse its discretion unless its decision "was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)).

The State has a privilege to refuse to disclose the identity of an informant that has assisted in an investigation. TEX. R. EVID. 508(a). But, this does not apply in a criminal case when the trial court determines there is a "reasonable probability" that the informant "may be able to give testimony necessary to a fair

determination . . . on guilt or innocence . . . ." *Id.* 508(c)(2). To obtain disclosure, a defendant bears the burden of showing that the informant may be able to give testimony relevant to the determination of guilt or innocence. *See Sanchez v. State*, 98 S.W.3d 349, 355–56 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *Bodin v. State*, 807 S.W.2d 313, 318 (Tex. Crim. App. 1991)). To meet this burden, "the defendant must present evidence, from any source, but cannot rely on mere speculation or conjecture." *Id.* (citing *Bodin*, 807 S.W.2d at 318). The defendant may not actually know the nature of the informant's testimony; therefore, "the defendant need make only a plausible showing of how the informant's testimony may be important, *i.e.*, how that testimony could be necessary to a fair determination of guilt or innocence." *Id.* at 355–56. The defendant must still show that the informant's potential testimony would significantly aid him. *Id.* at 356 (citing *Bodin*, 807 S.W.2d at 318). For example, "[w]henever it is shown that an informant was an eyewitness to an alleged offense[,] then certainly that informant can in fact give testimony 'necessary to a fair determination of the issues of guilt, innocence.'" *Anderson v. State*, 817 S.W.2d 69, 72 (Tex. Crim. App. 1991).

Phillips's defense rests on a purported case of mistaken identity to which he claims the informant's information contributed. To obtain the first warrant, Officer

Castro relied upon the description of two men, thought to be father and son, provided him by the informant. One description fairly closely matched Wooten's actual appearance. A few weeks later, during the execution of the second search warrant, Phillips was not present, but White and Spiller were. Spiller's appearance was a closer match to the informant's description of the second man given in the affidavit for the first search warrant. Additionally, Phillips elicited testimony from White that Spiller lived at Wooten's house and went by the nickname the informant gave to Castro after the first controlled buy.[2] From this evidence, Phillips argues that the informant should have been disclosed to testify to whether Spiller or Phillips was the person involved in the first controlled buy with Wooten.

However, the confidential informant was not an eyewitness to the offense for which Phillips was charged. The informant made a controlled buy at some point within forty-eight hours before the execution of the search warrant. Phillips was not charged with any alleged criminal activity that occurred during the controlled buy, but with the possession of a controlled substance with intent to deliver that occurred around 9:30 p.m. on February 3, 2012, when police executing a search warrant found him in close proximity to over 20 grams of crack cocaine.

---

[2] Wooten testified that Spiller would sometimes "come by," but denied that he lived there.

Phillips has made no showing that the informant could give any testimony relevant to the events that occurred at that time. In other words, there is nothing that indicates the informant would testify concerning whether Phillips exercised care, control, or custody over the crack cocaine on the evening of February 3, 2012. For this reason, we conclude that the trial court's decision was not outside of the zone of reasonable disagreement. *See Daniels v. State*, 25 S.W.3d 893, 898 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (holding trial court did not abuse discretion where informant was not present when appellant allegedly committed charged offense and informant's alleged knowledge of appellant selling drugs out of her house at one time does bear on her guilt or innocence of offense for which she was later arrested and charged); *Long v. State*, 137 S.W.3d 726, 733 (Tex. App.—Waco 2004, pet. ref'd) (holding trial court did not abuse discretion because informant only supplied information that established probable cause for search warrant, was not present at time of charged offense or during execution of search warrant, and did not supply information upon which State relied on for conviction of charged offense).

We overrule Phillips's second issue.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Justices Jennings, Brown, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

16