In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-19-00149-CR
_____

### CLARENCE HOWARD, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-05-06138-CR**

## MEMORANDUM OPINION

Clarence Howard was tried before a jury and found guilty of possession with intent to deliver four grams or more but less than 200 grams of methamphetamine.[1] At Howard's election, the trial court conducted a punishment hearing, which ended with the trial court pronouncing a fifteen-year sentence. Howard appealed and filed a brief. In his brief, Howard raises two issues for our review. First, he argues the

---

[1]*See* Tex. Health & Safety Code Ann. § 481.112(a), (d).

1

evidence admitted in his trial is insufficient to support the jury's finding that he possessed the meth that the police found hidden in the rear bumper of his car. Second, Howard contends the jury's verdict should be reversed and a new trial awarded because the trial court erred by allowing Trooper Brit Lopez, the officer who stopped Howard's car, to testify he believed Howard and the man driving Howard's car "were transporting the narcotics back to Houston to later distribute them." Because Howard's issues lack merit, we affirm.

Background

On May 9, 2018, Trooper Lopez stopped a car in Montgomery County after determining the registration for the car he saw being driven on a public road had expired.[2] During the stop, Trooper Lopez learned that William Myles was the car's driver, while he found Howard sitting in the car's front-passenger seat. Trooper Lopez spoke to Howard during the stop. Howard told him he owned the car. Trooper Lopez noticed a bong lying on the floorboard behind the driver. According to the trooper, people use bongs like the one he saw on the floorboard of Howard's car to smoke marijuana. The State offered the body-cam video the trooper captured of the stop. The recording, which was admitted, captures the conversations the trooper had

---

[2]Driving with an expired registration violates the Texas Transportation Code and is punishable by a fine. *See* Tex. Transp. Code Ann. §§ 502.040(a) (Registration Required; General Rule); 502.471 (making the failure to register a motor vehicle properly a misdemeanor and punishable by a fine not to exceed $200).

2

with Howard on the scene. Generally, the recording corroborates the trooper's account about what was said and happened during the stop.

While searching Howard's car, Trooper Lopez discovered several items commonly used to smoke marijuana as well as other controlled substances inside. Trooper Lopez testified that one of these items, a glass pipe, is commonly used to smoke crack. The trooper found that pipe in the ashtray located between the passenger's seat and driver's seat on the dashboard of the car. The trooper testified that upon inspecting the glass pipe, he saw it had burn marks on it and a white, crystal-like substance inside.

Trooper Lopez also found numerous baggies inside Howard's car in the search incident to the stop. According to the trooper, the baggies were marked with stars and symbols, which he explained are used by street-level dealers to package narcotics for sale. The trooper testified he found baggies throughout the car, including where Howard was seated in the car and the door panel on Howard's right. According to Trooper Lopez, some of the baggies had residue in them consistent with bags that had held narcotics. Others, however, not. According to the trooper, it's unusual for an ordinary user to leave baggies in a car because typically, users consume the narcotics in a bag and then throw it away.

Trooper Lopez also found a bag containing several baggies inside the rear bumper of Howard's car during the stop. When Trooper Lopez placed the baggies

on the car's hood, Howard began holding his stomach and complained his stomach was hurting. When the trooper opened the bag he placed on the hood, he found baggies in it. According to the trooper, one of these baggies appeared to contain meth, another appeared to contain cocaine. Trooper Lopez described the meth he saw inside one of the baggies he found in the car's bumper as a "lot of meth." The substance in the baggie the trooper suspected to contain meth was later tested at the Department of Public Safety's Crime Lab. The lab determined the baggie contained 75.79 grams of meth.

Howard called no witnesses when presenting his defense. Howard did, however, ask the trial court to admit an exhibit, a judgment that reflects William Henry Myles III (the person the trooper testified he saw driving Howard's car) was convicted for possessing a controlled substance. The judgment shows the date of the offense forming the basis of the conviction in that judgment as having occurred on May 9, 2018. After the trial court admitted the judgment of conviction relevant to Myles' conviction for possession, Howard rested. After that, the attorneys presented final argument and the jury retired to deliberate on a verdict. When it returned, the jury found Howard guilty of possession with intent to deliver four grams or more but less than 200 grams of meth.

## Standard of Review

In his first issue, Howard argues the evidence is insufficient to support the jury's finding convicting him of possession with intent to deliver the meth the trooper discovered in the rear bumper of his car. According to Howard, the evidence does not support the jury finding that, as the car's passenger, he knowingly exercised care, custody, and control of the meth. In reviewing claims that argue the evidence is insufficient to support a jury's verdict, the evidence from the trial is reviewed in the appeal in the light that favors the jury's verdict to determine whether the evidence, considered as a whole, allowed reasonable factfinders to conclude the defendant committed the essential elements of the offense the defendant seeks to overturn in his appeal.[3] By reviewing the evidence in the light favoring the verdict, we recognize "the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence."[4] As an appellate court, our role in conducting a sufficiency review is to determine "whether the necessary inferences made by the trier of fact are reasonable, based upon the cumulative force of all of the evidence."[5]

---

[3]*See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010).

[4]*Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011).

[5]*Id.*; *see also Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012).

In our review, we presume the jury resolved any conflicts that may exist in the evidence in a manner that favors the verdict the jury reached when the jury's resolution of the conflicts is reasonable.[6] Thus, we defer to the role the jury had to decide which witnesses were credible in evaluating whether the jury resolved any conflicts in a reasonable way.[7] The jury also has the right to decide how much weight to assign any testimony when reaching its verdict.[8] To avoid interfering with that right, we will not sit as a thirteenth juror and thereby substitute our views of the evidence for the view the jury adopted to resolve any conflicts that may exist when the jury's resolution of any conflicting evidence was reasonable.[9] State another way, "[w]here there are two permissible views of the evidence, the [jury's] choice between them cannot be clearly erroneous."[10]

While the State has the burden of proof, it need not introduce direct evidence to establish the defendant is guilty of the crime.[11] Instead, the evidence need only "point directly and independently to the defendant's guilt."[12] On appeal, we will

---

[6]*Brooks*, 323 S.W.3d at 922; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[7]*See Brooks*, 323 S.W.3d at 899.

[8]*Id.*

[9]*Id.*

[10]*Hooper v. State,* 214 S.W.3d 9, 15 (Tex. Crim. App. 2007) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985)).

[11]*Id.*

[12]*Id.* at 13 (cleaned up).

affirm the conviction when "the cumulative force of all the incriminating circumstances is sufficient to support the conviction."[13]

Possession of Meth

Howard challenges the possession element of his conviction in his appeal. To prove possession, the evidence must show the defendant possessed the substance that is identified in the defendant's indictment and prove the defendant knew the substance is one subject to the State's control.[14] Under the Penal Code, *possession* is defined as "actual care, custody, control, or management."[15] To prove unlawful possession, the State must prove (1) the defendant exercised care, custody, control, or management over the controlled substance (which in Howard's case based on his indictment was methamphetamine) and prove (2) the defendant knew the substance in his possession was meth.[16]

Howard does not argue that the substance Trooper Lopez found in the baggie he removed from the bag he found in the rear bumper of Howard's car was meth. Instead, he contends the bag the trooper found hidden in the car's bumper was not subject to his control. He notes he was a passenger in the car and none of the evidence shows the bag or baggies contained his fingerprints. But the State did not have to

---

[13]*Id.*

[14]*See* Tex. Health & Safety Code Ann. § 481.115(a).

[15]Tex. Penal Code Ann. § 1.07(a)(39).

[16]*See Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011) (cleaned up).

prove Howard was the only person who possessed the meth or prove that he touched the baggy containing the meth; instead, all it had to prove was that Howard's connection to the baggie of meth "was more than just fortuitous."[17]

To prove that, we follow the affirmative links rule and examine the evidence from which a reasonable factfinder can link the defendant to the drugs police find when they are not in a location that is under the defendant's exclusive control.[18] Examples of links considered to decide whether the evidence links the defendant to contraband that is in some location that is not under the defendant's exclusive control include but are not limited to:

- the accused's presence when the police conducted the search;
- whether the contraband was in plain view;
- the accused's proximity to and the accessibility of the narcotic;
- whether the accused was under the influence of narcotics when arrested;
- whether the accused possessed other contraband or narcotics when arrested;
- whether the accused made incriminating statements when arrested;
- whether the accused sought to flee;
- whether the accused made furtive gestures;
- whether there was an odor of contraband;
- whether other contraband or drug paraphernalia were present;
- whether the accused owned or had the right to possess the place where the police found the drugs;
- whether the drugs the police found were enclosed;
- whether the accused had a large amount of cash in his possession when the police arrested him; and
- whether the accused's conduct shows he was conscious of his guilt.[19]

---

[17]*Id.*
[18]*Id.*
[19]*See Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016).

In a given case, the number (or absence) of the above links is not dispositive of whether there is sufficient evidence to support the jury's verdict.[20] In other words, at trial, the State need not disprove every alternative theory the defendant may present in the trial to show the defendant possessed the contraband that is at issue in the trial.[21] Also, the number of links in a given case "is not as important as the logical force that they collectively create."[22] Thus, the fact that one or more links is absent is not "evidence of innocence to be weighed against the affirmative links present."[23] For that reason, the links that do exist need not be so strong that they exclude "every other outstanding reasonable hypothesis except the defendant's guilt."[24]

Here, the affirmative links tying Howard and the meth discovered in the bumper is sufficient for reasonable jurors to conclude that Howard's connection to the meth was more than just fortuitous. First, Howard told the trooper he owned the car. Based on his asserted right of ownership, the jury could have reasonably concluded that Howard had a superior right to possess items found in the car absent evidence showing the items did not belong to him. And no one testified in the trial that the items did not belong to Howard.

---

[20]*See Evans*, 202 S.W.3d at 162.
[21]*Tate*, 500 S.W.3d at 413.
[22]*Hubert v. State*, 312 S.W.3d 687, 691 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).
[23]*James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).
[24]*Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995).

Next, while that link, without more, does not prove Howard's guilt beyond reasonable doubt, there are even more links between Howard and the meth the trooper found in his car. For example, there were a large number of baggies found in Howard's car. According to Trooper Lopez, these baggies are like those that are used by drug dealers in packaging illegal drugs for sale. Some of these were found within Howard's reach from where he was sitting in his car.

Third, even though the meth hidden in the bumper was not within Howard's reach while he was in the car, nothing shows the meth hidden in the bumper could not have been accessed by the car's owner when the car stopped. Thus, the fact the meth was not within Howard's reach did not prevent the jury from inferring that he possessed the meth. Fourth, the jury heard testimony that Howard complained of pain in his stomach when Trooper Lopez placed the bag with the baggie of meth on the hood of the car. As the factfinder, the jury was free to view Howard's reaction as evidence revealing his awareness of the fact the bag contained illegal drugs that included a baggie of meth.

Fifth, Trooper Lopez testified that when Howard got out of the car, he saw tweezers and pieces of black tape fall from Howard's lap. Trooper Lopez explained the tape was significant in his opinion because people who smoke crack use tape to "tape off the end of the pipe so they don't burn their mouth[.]" Trooper Lopez testified that one of the baggies in the bag he found in the bumper contained a

10

substance that "[l]ooks like crack cocaine." Trooper Lopez explained that finding tweezers was significant because users of crack use tweezers to hold "a crack rock to the pipe." Thus, the trooper's testimony linked Howard to the bag and allowed the jury to infer he had care, custody, or control over the substances the trooper found inside including the baggie of meth.

In conclusion, the combined force of the evidence allowed the jury to link Howard to the bag of meth weighing 75.79 grams.[25] Because Howard's issue one arguments lack merit, the issue is overruled.

## Opinion Testimony

When the prosecutor asked Trooper Lopez to state what he concluded from the information obtained during the stop, Howard objected, complaining the question called for speculation. The objection was overruled. When Trooper Lopez answered, he testified he believed "Mr. Myles and Mr. Howard were transporting the narcotics back to Houston to later distribute them." In Howard's second issue, he argues the trial court erred when it allowed Trooper Lopez to answer the above question. He claims the error amounts to fundamental error because the error adversely affected his right to a fair trial. By suggesting the alleged error amounts to fundamental error, Howard has recognized that his objection in the trial, that the

---

[25]*See Evans*, 202 S.W.3d at 162; *see also Brooks*, 323 S.W.3d at 902 n.19.

11

trooper's testimony would be speculative, does not comport with the arguments he raises in his appeal.

Thus, the question is whether the prosecutor's question and the trooper's response amounted to fundamental error by affecting Howard's substantial rights, his right to be presumed innocent and whether, as he claims, that trooper's answer prevented the jury from properly exercising its role to resolve the facts that were in dispute in Howard's trial.[26]

We do not see how the question the prosecutor asked created a fundamental error. The question is open-ended, as it did not ask the trooper to testify that Howard was guilty based on the evidence presented in his trial. Additionally, nothing in the record shows the prosecutor could have expected the trooper to answer the question by responding with a statement about what he believed Howard and Myles intended to do with the drugs the trooper found in the car. Even had the trooper been asked about whether he thought Howard intended to distribute the drugs, his opinion would merely explain why the trooper arrested Howard after locating the drugs in his car. While that reveals the trooper believed that probable cause existed sufficient to effectuate Howard's arrest, that's a different matter than whether the evidence before the jury in the trial proved Howard was guilty beyond reasonable doubt. For these

---

[26]*See Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).

reasons, we disagree with Howard that the prosecutor's question and the trooper's answer usurped the jury's right to act as factfinder in the trial.

Our conclusion that Howard's substantial rights were not affected by the alleged error is further supported by the charge the trial court gave the jury in the trial. In the charge, the trial court gave the jury free rein to decide the facts it decided to believe. For instance, the trial court instructed the jury not to consider "the fact that [Howard] has been arrested, confined, or otherwise charged." It explains "[y]ou may not draw any inference of guilt from any of these circumstances." And on the presumption of innocence, the charge states: "The Defendant is presumed innocent of the charge. All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proven beyond a reasonable doubt."

For all these reasons, we conclude Howard has not shown the alleged error amounts to fundamental error that violates the standards set out in *Jasper*.[27] By failing to lodge a timely objection to the question that comports with the argument he raises in his appeal, Howard failed to properly preserve his complaint for our review.[28] We overrule Howard's second issue.

---

[27]*Id.*
[28]Tex. R. App. P. 33.1 (Preservation; How Shown); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (holding the complaint on appeal "must comport with the objection made at trial").

## Conclusion

Having overruled Howard's issues, we affirm the judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on March 24, 2021
Opinion Delivered May 19, 2021
Do Not Publish

Before Kreger, Horton and Johnson, JJ.