# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-13-00543-CR
_____

### JAMES ERIC LOFTEN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CR29858**

### MEMORANDUM OPINION

A jury found James Eric Loften guilty of possession of a controlled substance, cocaine, with intent to deliver, in an amount of four grams or more but less than 200 grams. *See* Tex. Health & Safety Code Ann. § 481.112(d) (West 2010). Before the start of the punishment phase of his trial, Loften pled "true" to the State's allegation that he had previously been found guilty of delivering a controlled substance. When the punishment phase of his trial ended, the jury found

1

that Loften should serve a 99-year sentence, and found that he should pay a $10,000 fine.

In his appeal, Loften presents five issues, claiming that he received ineffective assistance, that the State improperly exercised its peremptory strikes, that the trial court erred in denying his motion to suppress, that the trial court should have conducted a hearing to determine the truth of various statements in the probable cause affidavit used by the State to obtain the warrant for his arrest, and that the evidence is insufficient to show that he was in possession of the drugs that police found in the SUV that he was driving when he was arrested. We conclude that Loften's issues are without merit, and we affirm the trial court's judgment.

Ineffective Assistance of Counsel

In his first issue, Loften argues that he received ineffective assistance of counsel. We apply a two-pronged test to resolve ineffective assistance claims. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Under the first prong of *Strickland*, Loften must demonstrate that he received ineffective assistance under a preponderance of the evidence standard. *See Strickland*, 466 U.S. at 687; *Thompson*, 9 S.W.3d at 813. To establish that he received ineffective assistance, Loften must show that his trial attorneys performed below the standard expected of counsel under an objective

standard of reasonableness, and he must demonstrate that had his attorneys' assistance not been deficient, a reasonable probability exists that the outcome of his trial would have been different. *See id.* at 687–88, 694; *Thompson*, 9 S.W.3d at 812. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Thompson*, 9 S.W.3d at 812.

Our review of ineffective assistance claims is highly deferential to trial counsel; generally, we begin with the presumption "that counsel's actions fell within the wide range of reasonable and professional assistance." *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). When the defendant files a motion for new trial that alleges ineffective assistance of counsel, the trial court's denial of the motion for new trial is reviewed for abuse of discretion; therefore, an appeals court will reverse the trial court's ruling only when the ruling is clearly erroneous and arbitrary. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). "A trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling." *Id.* In reviewing the record of the defendant's trial, the evidence introduced during the trial is reviewed in the light most favorable to the verdict of the jury. *Id.* We apply the same deferential standard of review to a trial court's determination regarding historical facts, as the trial court determined the

historical facts from the live testimony and affidavits when ruling on the defendant's motion. *See id.*

In this case, Loften filed a brief that points out five things he claims his trial attorneys should have done differently, and he concludes that his representation fell below the objective standard of what is considered to be reasonable. First, Loften contends that his attorneys failed to file a pretrial motion to require the State to disclose the identity of the confidential informant mentioned in the probable cause affidavit. Second, Loften contends that his trial attorneys were provided information which they could have used to dispute that the large amount of money that he was found with when arrested was money that came from an illegal activity. Third, Loften argues that his trial attorneys failed to properly investigate and put before the jury evidence showing that he did not own or lease the house where police found scales and baggies, items commonly used in the packaging of contraband for sale. Fourth, Loften contends that his trial attorneys failed to present evidence to the jury showing that the SUV he was driving at the time he was stopped and arrested did not belong to him. Fifth, Loften claims that trial counsel failed to file a motion to require the State to disclose the extraneous offenses that it would introduce into evidence during his trial.

4

With respect to Loften's first complaint, which concerns his claim that his attorneys failed to discover the identity of the State's confidential informant prior to his trial, we note that the record does not include an explanation from Loften's attorneys about why they did not file a motion pursuing discovery of the informant's identity. The confidential informant mentioned in the probable cause affidavit is the person who passed the marked bills in the drug buy the day before Loften was arrested. The bills were found in Loften's possession when he was arrested. However, the attorney who represented Loften at the hearing on his motion for new trial did not develop a full record to explain why the attorneys who represented Loften at trial did not obtain the confidential informant's identity prior to the trial. The decision not to develop the record on this matter appears to have been a tactical one, as the record shows that the attorneys who represented Loften during the trial were available and could have been questioned about the decisions they made in defending Loften against the State's claim that he was guilty of possession with the intent to deliver. However, the attorneys who represented Loften at the hearing on the motion for new trial chose not to call Loften's trial attorneys during the hearing.

Additionally, the record shows that during the trial, Loften's attorneys did ask for the identity of the confidential informant that is mentioned in the probable

5

cause affidavit; however, the request they made for the information during Loften's trial was denied. That ruling is unchallenged in this appeal. Thus, Loften's ineffective assistance claim addresses only whether counsel rendered ineffective assistance by failing to file a pretrial motion to disclose the confidential informant's identity.

Generally, the State has a privilege to refuse to disclose an informer's identity. Tex. R. Evid. 508 (Informer's Identity Privilege). However, the privilege does not apply if the trial court finds there is a reasonable probability that the informer could give testimony that is necessary to a fair determination of the defendant's guilt or innocence. *Id.* 508(c)(2)(A). Nonetheless, it is defendant's burden to demonstrate that the confidential informant's identity should be disclosed. *Bodin v. State*, 807 S.W.2d 313, 318 (Tex. Crim. App. 1991).

"In deciding an ineffective-assistance claim, a reviewing court must analyze the reasonableness of counsel's conduct on the facts of the particular case, viewed at the time of the conduct." *Okonkwo v. State*, 398 S.W.3d 689, 693 (Tex. Crim. App. 2013). When trial counsel has not provided an explanation for the strategies that trial counsel employed at trial, the decisions counsel made are reviewed with great deference. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Generally, when faced with a record that is silent about why counsel chose

6

to undertake a given strategy, appellate courts are not at liberty to find trial counsel's conduct ineffective, unless the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). Additionally, any *Strickland* claim must be "'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Id.* (quoting *Thompson*, 9 S.W.3d at 813).

Although the request for the identity of the confidential informant was not made before Loften's trial, the trial record demonstrates that trial counsel acted promptly to request the information when it appeared the State would use the information that it developed as a result of searching the house as part of its evidence to prove that Loften had possessed the cocaine found in the SUV he was driving with the intent to deliver it. It appears that Loften employed a trial strategy designed to exclude testimony about the drug buy that had occurred the day prior to Loften's arrest. During trial, when the officer testified that he conducted a controlled buy with a confidential informant, counsel moved to exclude any evidence concerning the events that occurred that day, which was the day before Loften was arrested. The officer who observed the informant purchase drugs testified that he looked through the open door of the house, and he observed Loften

7

inside when the confidential informant entered the residence. After the trial court overruled multiple defense objections and ruled that the officer's testimony concerning the controlled buy was relevant to Loften's intent to deliver, counsel moved to disclose the informer's identity, arguing the State had opened the door to discovering the informant's identity by eliciting trial testimony regarding the controlled buy.

Without a record that shows why trial counsel chose to await trial to seek the identity of the confidential informant who purchased drugs at a house in which police claimed Loften was present on the day prior to his arrest,[1] and on a record that is silent regarding Loften's trial attorneys' explanation about the matter, Loften has not rebutted the strong presumption that no reasonable attorney would have employed the strategy that is at issue in his appeal. Under the circumstances,

---

[1] It is apparent from the record that the confidential informant was not an eyewitness to the offense for which Loften was convicted in this case, and that the confidential informant was not present when the officers executed either the arrest or the search warrants. *See Ford v. State*, 179 S.W.3d 203, 210 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *Abdel-Sater v. State*, 852 S.W.2d 671, 674 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). Because the confidential informant was not present during the arrest or the search of the house where the drug buy occurred the day before Loften's arrest, and given the weight of the cocaine and the packaging material found in the SUV being driven by Loften when he was arrested, Loften's trial attorneys could have reasonably believed that the State would not rely on the items discovered during the search of the house in attempting to prove Loften's guilt. Consequently, Loften's trial attorneys might have believed that a pretrial motion to disclose the confidential informant's identity, if filed, would be denied.

and in the absence of a record showing why Loften's trial attorneys chose not to file a pretrial motion requesting the confidential informant's identity, we cannot conclude that challenged conduct was so outrageous that no competent attorney would have engaged in it. *See Goodspeed*, 187 S.W.3d at 392.

In the second of Loften's ineffective assistance arguments, Loften suggests that trial counsel failed to request or present any evidence of Loften's financial condition to rebut the State's theory that the money found on Loften when he was arrested was money that he obtained by selling drugs. A witness who stated that she knew Loften testified during the trial that Loften is "a lucky guy" who wins at the casino. According to this witness, the $6,000 that Loften had in his pocket when he was arrested could have been money that he won gambling at a casino. Nonetheless, this same witness agreed that the two marked bills from the controlled drug transaction that were in his pocket when he was arrested probably had not come from a casino. In the hearing on the motion for new trial, Loften produced receipts from a casino, and he stated that he had asked trial counsel to introduce them as evidence to show that the money found on him when he was arrested was obtained legally. However, the trial court noted during the hearing that the dates on the receipts were not close in time to the date of Loften's arrest. While the attorneys who represented Loften at trial were not called to testify during

9

the hearing on Loften's motion for new trial, they did file affidavits to explain why Loften's explanation about the money's source would not be productive. The affidavits state that "[t]here appeared to be a significant nexus between the money that was recovered from the defendant, including marked buy money, and the sale and distribution of drugs." Based on all of the evidence before the trial court during the hearing, the trial court could reasonably conclude that trial counsel made a reasoned tactical decision to forego introducing the receipts from the casino. *See Goodspeed*, 187 S.W.3d at 392.

In his third ineffective assistance argument, Loften suggests that trial counsel failed to investigate and present evidence designed to dispute his connection with the house where the confidential informant purchased drugs on the day before Loften was arrested. During the search of the house, police found scales and baggies, as well as drugs other than cocaine—items that the trial court viewed as relevant to the jury's determining whether Loften intended to sell the cocaine that the police found earlier in the SUV that Loften was driving when he was arrested.

The record contains substantial evidence linking Loften to the house where the drug buy occurred. According to Loften's testimony at the hearing on his motion for new trial, his brother lived at the house, he visited there sometimes, and

10

some items of mail that belonged to him were found during the search. During the trial, the State also established that police found the keys to the house in the SUV when Loften was arrested, that Loften had been seen at the house on multiple occasions before he was arrested, that Loften was living there at the time of his arrest, and that Loften had been seen leaving the house in the SUV shortly before he was arrested.

During the hearing on his motion for new trial, Loften tried to minimize his connection to the house. According to Loften, he did not have a lease to the property, his brother lived there, and he merely visited and kept a suitcase containing his mail on the premises. Loften testified that he shared this information with his lawyer, who told him this type of evidence would be "[c]umulative or something like that." However, Loften did not ask the attorneys who represented him during his trial to explain why they chose not to introduce testimony consistent with the information he gave them about the fact that his brother owned the house where the drug buy occurred.

From the testimony as a whole, the trial court could have reasonably concluded that Loften's attorneys investigated Loften's connection with the house where the drug buy occurred, and that Loften's attorneys decided, as a matter of trial strategy, not to further develop the evidence regarding the links between

11

Loften. We conclude that Loften has not rebutted the strong presumption that he received reasonable professional assistance with respect to investigating and deciding whether to introduce evidence to show that his brother was the person who owned or leased the house. *See Goodspeed*, 187 S.W.3d at 392.

Fourth, Loften argues that his trial attorneys were ineffective for failing to present any evidence that the vehicle he was driving did not belong to him. According to the testimony that Loften provided during the hearing on his motion for new trial, Loften rented the SUV but did not own it. However, during the hearing on his motion for new trial, Loften did not ask his trial attorneys why they failed to present this evidence during the trial. We cannot speculate that Loften's trial attorneys were ineffective where the record was not developed regarding their strategy. Moreover, Loften's testimony that he rented the SUV does not show that he had no links to the SUV, given the evidence showing he was seen on multiple occasions driving it for several days prior to and on the date of his arrest.

Finally, Loften contends that trial counsel did not file a motion requesting that the State disclose the extraneous offenses that the State would use during trial. However, the affidavits filed by the attorneys who represented Loften at trial state that the prosecutor had an open file policy, and that they were provided with notice of all of the extraneous offenses that the State offered during Loften's trial. During

12

the motion for new trial hearing, Loften did not question his trial attorneys regarding the explanation found in their affidavits. We hold that Loften failed to overcome the strong presumption that he received reasonable professional assistance. *See Thompson*, 9 S.W.3d at 814. We overrule issue one.

*Batson v. Kentucky*

In issue two, Loften contends that, during jury selection, the trial court erred in denying his challenge to the way the State exercised its peremptory strikes. The Equal Protection Clause forbids a prosecutor from exercising peremptory strikes based solely on the race of the potential juror. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). Courts evaluate *Batson* claims in three steps. *Purkett v. Elem*, 514 U.S. 765, 767 (1995). First, the defendant must make a prima facie showing of racial discrimination. *Batson*, 476 U.S. at 96-97. If the prosecutor articulates his reasons for the challenged peremptory strike and the trial court rules on the ultimate question of intentional discrimination, an appeals court does not need to consider whether the defendant met this first step. *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009).

In the second step, which is in response to the *Batson* challenge, the prosecutor is required to articulate a race-neutral explanation for the challenged peremptory strike. *Batson*, 476 U.S. at 97-98. Nevertheless, the explanation offered

is not required to be "persuasive, or even plausible." *Elem*, 514 U.S. at 767-68. All the prosecutor must do to satisfy this step of the inquiry is articulate a reason that does not deny equal protection. *Id*. at 768.

In the third step, the trial court must determine if the defendant has proven purposeful discrimination. *Batson*, 476 U.S. at 98. With respect to the trial court's evaluation of the defendant's proof at this stage of the inquiry, the trial court's ruling will be reversed only if its decision was clearly erroneous. *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). The highly deferential standard acknowledges that the trial court is in the best position to determine if the prosecutor's explanation is genuinely race neutral. *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004); *see also Snyder*, 552 U.S. at 477. The genuineness of the prosecutor's asserted non-racial motive for striking the potential jurors is what matters. *See Elem*, 514 U.S. at 769. "However, the reason for the strike by the prosecutor must be credible given the whole of voir dire testimony and other circumstances." *Nieto v. State*, 365 S.W.3d 673, 679 (Tex. Crim. App. 2012) (citing *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005)).

Generally, in the absence of exceptional circumstances, the trial court's decision to accept a prosecutor's explanation about why a juror was stricken is a decision that courts are unlikely to overturn on appeal. *See Snyder*, 552 U.S. at

14

477. During jury selection, Loften identified three African-American members of the panel that the State removed by using its peremptory strikes. The trial court asked the State to explain its reasons for striking the three members of the panel, numbers 18, 32, and 34. The prosecutor stated that he struck every person involved in law enforcement or who worked in a prison or a jail, including potential jurors 13, 32, 34, and 43. Additionally, the prosecutor stated that he struck potential juror 18 because the potential juror stated that he had been put to trial for a crime and had been acquitted.

Discriminatory intent is not inherently present in the reasons given by the prosecutor to explain the State's strikes. Therefore, the reasons the State offered are deemed to have been race neutral. *Simpson v. State*, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003).

Loften argues that the reasons offered by the prosecutor for removing the only African-American members of the venire from the jury, while racially neutral, are "obviously pretextual." He contends that the answers the three potential jurors provided during voir dire were "innocuous and clearly unbiased." Potential juror 18, the person who indicated he had been tried and acquitted, explained the circumstances of the case that resulted in his acquittal. According to potential juror 18, after forgetting to pay for his gasoline, someone met him at his car when he

15

came out of the store. At that point, he paid for the gas with money that he had in his pocket. With respect to potential jurors 32 and 34, who worked in law enforcement, both agreed with defense counsel when asked: "Do you think people sometimes get sent to prison that shouldn't get sent to prison? They didn't get justice?"

The State did not explain why it believed that an employee of a prison or jail, or a person who had previously been acquitted of a crime, were unacceptable as jurors. But, Loften did not question the prosecutor about his racially neutral explanations, nor did Loften attempt to demonstrate that the State treated similarly situated white and black members of the venire differently. *See Miller-El*, 545 U.S. at 241. A challenge to a proffered race-neutral reason for a peremptory strike presents a fact question for the trial court to decide; therefore, the decision the trial court made on the matter is entitled to deference unless its ruling was clearly erroneous. *See Watkins v. State*, 245 S.W.3d 444, 447-48 (Tex. Crim. App. 2008). In Loften's case, the record of jury selection reveals no disparate treatment of persons of different races or ethnic groups, nor did the prosecutor direct questions to the venire that were designed to single out any groups based on their race. *See id.* at 450. In this case, the trial court found that the State's explanations were race neutral, and found that the State had not used the answers of the potential jurors as

16

a pretext to exercise any race-based strikes. The trial court's findings are supported by the record and are not clearly erroneous. We overrule issue two.

Motion to Suppress

In issue three of his brief, Loften challenges the trial court's denial of his motion to suppress, which addressed evidence obtained during the search of Loften's SUV and the search of the house where the drug buy occurred. In reviewing a trial court's ruling on a motion to suppress, we afford almost total deference to the trial court's determination of facts, if those facts are supported by the record. *State v. Duran*, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013). Since the State prevailed on the motion at issue in this appeal, we "view the trial judge's factual findings in the light most favorable" to the trial court's ruling. *See id.* at 571.

The trial court's application of search and seizure law to the facts of the case are reviewed on appeal using a de novo standard of review. *See id.* An appellate court should affirm the trial court's ruling if the record before the trial court reasonably supports the trial court's ruling and if the ruling is correct on any theory of law that applies to the case. *See id.* Before issuing a search warrant, the magistrate must first find probable cause that a particular item will be found in a particular location. *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007).

This process requires the magistrate to make a practical, common-sense decision about whether, given all the circumstances set forth in the affidavit, and considering the veracity and basis of knowledge of a person who is supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Accordingly, probable cause to support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably at the place the police are asking for the authority they need to conduct the search. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986).

"As a reviewing court, we apply a highly deferential standard to the magistrate's determination because of the constitutional preference that searches be conducted pursuant to a warrant." *Moreno v. State*, 415 S.W.3d 284, 287 (Tex. Crim. App. 2013). We must ensure that the magistrate had a substantial basis for concluding that probable cause existed based on the four corners of the affidavit and reasonable inferences therefrom. *Gates*, 462 U.S. at 238-39. Whether the facts mentioned in the affidavit are adequate to establish probable cause depends on the totality of the circumstances. *Ramos v. State*, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996).

18

In connection with the hearing on Loften's motion to suppress, the trial court made the following findings:

1. the attorney for the defendant, James Eric Loften, filed a Motion to Suppress in the subject cause;

2. the subject of the Motion to Suppress were items recovered pursuant to a search warrant and incident to an arrest that was made pursuant to an arrest warrant;

3. the affidavit for the warrant and warrant were admitted into evidence during the hearing on the Motion to Suppress;

4. the Court conducted a "four corners" analysis of the affidavit in support of the search warrant pursuant to *State v.* [*McLain*], 337 S.W. 3d 268, Tex. Crim. App. 2011;

5. the Court finds the affidavit was presented to a disinterested magistrate, being 253rd Judicial District Judge Chap B. Cain III;

6. the Court finds that the reliability of the confidential informant was established within the four corners of the affidavit;

7. the Court finds that reliable facts were presented in the affidavit by City of Liberty Police Officer [who signed the affidavit];

8. the Court finds that sufficient probable cause was contained within the four corners of the affidavit to issue the search warrant and arrest warrant; *Code of Criminal Procedure 18.01(g) and 18.03*;[2]

9. the Court finds the evidence seized pursuant to the search warrant was not seized in violation of the defendant's rights;

---

[2] *See generally* Tex. Code Crim. Proc. Ann. arts. 18.01(g), 18.03 (West 2015).

19

10. the Court finds that the defendant's arrest pursuant to the arrest warrant was not in violation of the defendant's rights;

11. the Court finds that evidence seized incident to the search after the defendant's arrest was not in violation of the defendant's rights;

12. the Court expressly denies the defendant's Motion to Suppress.

Loften challenges the trial court's finding that the confidential informant was reliable based on the information in the four corners of the probable cause affidavit. In this case, the officer who signed the probable cause affidavit stated that he received information from a confidential informant. The affidavit discloses that the confidential informant is a citizen of Texas, "has a limited criminal history, with no violent, no drug related charges, consisting of only misdemeanor charges[,]" has no pending criminal charges, and "has knowledge of crack cocaine and other controlled substances from personal experience with the substances." The officer who signed the affidavit indicated that the confidential informant, on at least two prior occasions, had given the police reliable information.

According to Loften, the reliability of the confidential informant was not sufficiently established because the officer who signed the affidavit failed to provide the dates that explained when the confidential informant had on other occasions provided the police with the information they found reliable. However, the credibility of an unnamed informant may be established by allegations that the

20

informant had proven reliable on previous occasions. *Blake v. State*, 125 S.W.3d 717, 726 (Tex. App.—Houston [1st Dist.] 2003, no pet.). "This reliability may be established by the general assertions of the affiant, as stated in the affidavit, concerning the informant's prior reliability." *Id.* In our opinion, the affiant's statement that the informant was known to the affiant and had given the affiant reliable information on two past occasions was sufficient to allow the magistrate to conclude that the informant was a reliable source of information. *Capistran v. State*, 759 S.W.2d 121, 128 (Tex. Crim. App. 1988) (op. on reh'g).

Loften argues that the officer who signed the affidavit offered no facts to support a reasonable inference that the confidential informant was providing information that illegal activity had occurred at the house that police were asking to search. According to the affiant, "This [confidential informant] provided detailed information about this suspected place and the suspected parties to your affiant which your affiant was able to confirm through visual surveillance of the suspected place." While the officer who signed the affidavit did not describe the "detailed information" that he had corroborated through surveillance, he did describe a controlled buy that he conducted with the confidential informant within 72 hours of the time that he signed the affidavit. The sequential facts of the controlled buy are set forth in the officer's affidavit. These facts show that the

officer who signed the affidavit (1) searched the confidential informant; (2) gave the informant money to buy cocaine; (3) followed the confidential informant to the residence; (4) watched the confidential informant enter the residence, where he spoke with Loften and negotiated the purchase of cocaine; (5) observed the confidential informant leave the residence; (6) followed the confidential informant to a predetermined location; (7) obtained an "off white powder like substance" from the confidential informant; (8) tested the substance in the field, and that test indicated the substance was cocaine; and (9) noted that the confidential informant stated he saw more cocaine and "other types of narcotics" in the residence where the purchase occurred. These facts regarding the controlled buy are detailed, and they show that the controlled buy occurred at the house that the police wanted to search. They also show that there was a reasonable prospect that more contraband would be found in the house that the warrant authorized the police to search.

"The circumstances of a controlled buy, standing alone, may corroborate an informant's tip and provide probable cause to issue a warrant." *State v. Griggs*, 352 S.W.3d 297, 305 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Loften argues the officer's probable cause affidavit failed to identify the name of the officer that observed the confidential informant, failed to specify the location of the observer, failed to specify how long the informant was inside the residence, and failed to

22

state how much cocaine was reportedly seen by the informant inside the residence. However, "[t]he proper analysis of the sufficiency of a search-warrant affidavit is not whether as much information that could have been put into an affidavit was actually in the affidavit." *Rodriguez*, 232 S.W.3d at 64. The combined logical force of the facts that are contained in the affidavit demonstrate that the police were controlling the informant regarding the purchase that occurred inside the house that police were asking to search. When combined with the confidential informant's tip that the confidential informant reported seeing more cocaine inside the residence, together with the information showing the confidential informant provided reliable information previously, the affidavit contained sufficient details that provided the magistrate with a sufficient basis to conclude the warrant should issue. *See Sadler v. State*, 905 S.W.2d 21, 22 (Tex. App.—Houston [1st Dist.] 1995, no pet.).

As a reviewing court, we are obliged to defer to the magistrate and uphold the magistrate's determination based upon all reasonable and commonsense inferences and conclusions that the facts in the affidavit support. *Rodriguez*, 232 S.W.3d at 64. Issue three is overruled.

Reliability of Probable Cause Affidavit

In his fourth issue, Loften contends the trial court erred by not conducting a *Franks v. Delaware* hearing to address the reliability of the officer's affidavit.

Under *Franks v. Delaware*, if a defendant establishes that a probable cause affidavit contains false statements that were made knowingly or intentionally, or with reckless disregard for the truth, and if the false statements were material to the determination of probable cause, the false material must be excised from the affidavit to determine if the affidavit, without the false statement, is sufficient to support the warrant. 438 U.S. 154, 155-56 (1978); *Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007). However, "[a] misstatement in an affidavit that is merely the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not render invalid the warrant based on it." *Dancy v. State*, 728 S.W.2d 772, 783 (Tex. Crim. App. 1987) (clarifying that a misstatement in an affidavit resulting from mere negligence in checking or recording facts relevant to probable cause determination "is beyond the pale of *Franks*"); *see also Franks*, 438 U.S. at 165.

"An affidavit supporting a search warrant begins with a presumption of validity; thus, the defendant has the burden of making a preliminary showing of deliberate falsehoods in that affidavit before he is entitled to a *Franks* hearing." *Cates v. State*, 120 S.W.3d 352, 355 (Tex. Crim. App. 2003). While courts presume that the evidence supporting a probable cause finding is truthful, the

Fourth Amendment does not mandate that every fact in a supporting affidavit be correct. *See Franks*, 438 U.S at 164-65.

In his affidavit for a search and arrest warrant, the officer who signed the affidavit stated: "This [confidential informant] has a limited criminal history, with no violent, no drug related charges, consisting of only misdemeanor charges and no pending criminal charges[.]" In his appeal, Loften contends that he made a preliminary showing that the officer who provided the affidavit failed to inform the magistrate that the confidential informant had a record that included a crime of moral turpitude. Additionally, Loften argues that the officer who signed the affidavit falsely implied that he had run the confidential informant's criminal history before signing the affidavit.

Loften points to the trial testimony of one of the other officers involved in the investigation to support his claim that the information in the affidavit about his criminal history was false. Another officer that assisted in the investigation, while being cross-examined during the trial, stated that she had worked with the confidential informant on two or three occasions in the previous few years, that to her knowledge the confidential informant was not being paid to provide information and did not have a pending criminal case, and that she believed the

informant's criminal history included a theft case. The probable cause affidavit contains no mention of a theft conviction.

Subsequently, Loften recalled the officer who signed the affidavit that supported the search warrant. The officer who signed the probable cause affidavit stated that to his knowledge, the confidential informant had not been convicted for theft, and the informant was neither being paid to provide information nor providing information in exchange for a promise of leniency. The officer who signed the probable cause affidavit also explained that he had not researched the informant's criminal history when preparing the probable cause affidavit, and he stated that he had run the informant's history on prior occasions. The officer who signed the probable cause affidavit also testified that he was much more familiar with the confidential informant's background than the other officer that had testified about her involvement with the informant.

To establish a right to a *Franks* hearing, the defendant must make a preliminary showing that the individual who signed the probable cause affidavit made statements that were deliberately false or made statements with a reckless disregard for their truth; a mere showing of negligence or innocent mistake is insufficient. *Franks*, 438 U.S. at 171. In this case, the defendant did not prove that the informant's criminal history included a conviction for theft. Instead, the trial

court heard conflicting testimony that the confidential informant's criminal history might include a crime of moral turpitude, and the officer whose affidavit indicates the informant had no pending criminal cases admitted that he was relying on his familiarity with the confidential informant and knowledge from running the confidential informant's criminal history at an undetermined time before the date he prepared the probable cause affidavit. Additionally, there is no evidence proving that the officer who signed the probable cause affidavit knew of any additional criminal history about the confidential informant that he intentionally, knowingly, or recklessly failed to disclose in his affidavit. Even if we assume that the officer should have checked on the confidential informant's more recent criminal history immediately before he signed the affidavit, Loften has not shown that the officer would have discovered that the informant had a pending case, or that the confidential informant had a conviction for theft. We conclude Loften failed to show that the officer's affidavit contained false statements, and he failed to show that any of the statements were, made intentionally, knowingly, or with reckless disregard for their truth. *See id.*; *see also Dancy*, 728 S.W.2d at 782. We overrule issue four.

## Sufficiency of the Evidence

In his fifth issue, Loften challenges the sufficiency of the evidence to support his conviction for possession with intent to deliver a controlled substance. Loften argues the State failed to prove that he knowingly exercised care, custody, and control over the contraband seized from the vehicle he was driving. Also, Loften argues the State failed to establish he had exclusive possession of the residence that the police searched when they executed the search warrant.

In reviewing a challenge to the sufficiency of the evidence to support a conviction in a criminal case, the evidence is assessed in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). Because it is the jury's responsibility to resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts, a jury verdict will be upheld "unless a reasonable juror must have had a reasonable doubt as to at least one of the elements of the offense." *Runningwolf v. State*, 360 S.W.3d 490, 494 (Tex. Crim. App. 2012).

"'Possession' means actual care, custody, control, or management." Tex. Health & Safety Code Ann. § 481.002(38) (West Supp. 2014). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or

28

is aware of his control of the thing for a sufficient time to permit him to terminate his control." Tex. Penal Code Ann. § 6.01(b) (West 2011). Generally, a person's mere presence at the location where drugs are found is not enough, by itself, to establish actual care, custody, or control of the drugs, but presence or proximity, may be sufficient to establish that element beyond a reasonable doubt when that circumstance is combined with other circumstantial or direct evidence. *See Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).

When the defendant is not in exclusive possession of the place where the police find the contraband, additional independent facts and circumstances can affirmatively link the accused to the contraband. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)). Having evidence affirmatively linking the accused to the contraband requires that the evidence—whether direct or circumstantial—establish that the defendant's connection with the drugs was more than fortuitous. *Evans*, 202 S.W.3d at 161. The logical force that the affirmative links create determines whether the jury could rationally find beyond a reasonable doubt that the defendant had actual care, custody, or control over the controlled substance. *Id.* at 162.

The search and arrest warrant authorized the search of a particular residence in Liberty, Texas where a controlled buy through a confidential informant had been conducted on the day before Loften's arrest. The officer in charge of Loften's case testified that after searching the informant and determining the informant carried no drugs or money, he gave the informant two twenty-dollar bills. The confidential informant remained in the vision of police officers until the informant entered the residence. When the informant entered the residence, the officer in charge of Loften's case could see that Loften was inside. The informant left the residence and remained in the view of police officers until the informant was searched a second time. The officer in charge of Loften's case obtained a warrant that evening and executed the warrant within twenty-four hours of the time that it was issued. Items in plain view that police seized after searching the house where the controlled buy occurred included digital scales, an open box of plastic baggies, and a plastic baggie containing an off-white substance. Police officers also seized an open letter from the Internal Revenue Service that was addressed to Loften at a post office box in Liberty, Texas. The officer in charge of Loften's case testified that in his experience as a law enforcement officer with twenty-five years of experience, houses where drugs are being manufactured and delivered share certain characteristics, including the presence of baggies, scales, and powdery residue of

the type that is visible in photographs of the interior of the residence of the house that the police searched the day before Loften was arrested.

In addition to authorizing a search of the residence, the warrant ordered Loften's arrest. On the day of Loften's arrest, the officers followed him to a neighboring town, where they stopped the SUV he was driving. The sole passenger was Loften's elderly father. During the search of Loften that occurred immediately after his arrest, the police discovered that Loften was carrying the two marked bills, which had been used in the previous day's controlled buy in his pocket, along with approximately $6,000 in cash. The officers also searched the SUV. The SUV's center console contained a pair of sunglasses, several sets of keys, and a plastic container holding thirteen off-white rock-like substances and small baggies of white powder. One of the sets of keys opened the deadbolt to the house that the police searched pursuant to the search warrant.

The identities of the persons who held the title to the residence that police searched and the SUV that Loften was driving when he was stopped are not in evidence. One of the officers who testified at the trial explained that the SUV was owned by a rental company, and he indicated that he did not know who rented it. A detective testified that at the time of Loften's offense, she lived near the residence that was searched, and she indicated that she drove by the residence frequently.

31

The detective explained that she saw Loften at the residence several times in the two-to-three week period prior to Loften's arrest, and that she had previously seen Loften driving the same vehicle in which he was arrested. Another police officer testified that Loften lived in the residence that was searched, and that she had also seen Loften driving the SUV prior to the date he was arrested. The record includes testimony that on the day he was arrested, Loften was seen arriving at the residence that was searched, seen using keys to unlock the burglar bars there, and seen entering the residence. The testimony of another police officer indicates that on the day the police executed the search and arrest warrant, five people other than Loften were seen coming and going from the house that was searched, but none of them entered the residence.

Haley Yaklin of the Texas Department of Public Safety testified regarding the forensic analysis of the substances that police seized pursuant to the search and arrest warrant. The substance in the container retrieved from the SUV Loften was driving when he was arrested contained 2.06 grams of loose cocaine with the consistency of rock. There were also eight baggies of a moist off-white substance. Yaklin indicated that these baggies contained another 2.35 grams of cocaine.

In this case, Loften was linked to the drugs as the driver of the SUV in which the contraband was found. *See Garcia v. State*, 218 S.W.3d 756, 763 (Tex.

App.—Houston [1st Dist.] 2007, no pet.). He was also linked to the house that the police searched. Loften had a key to the house, and a scale for weighing drugs was in the house, and it was in plain view. A residue of a substance, consistent with preparing drugs, was also present. *See Hubert v. State*, 312 S.W.3d 687, 691 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). The baggies, scales, and powdery residue in plain view in the house support the inference that the residence was being used as a "drug house." Loften used keys to enter the residence the day the officers executed the warrant, and keys to the residence were found in the closed console of the SUV that Loften was driving when he was arrested. The SUV was linked to Loften through testimony showing that Loften was seen driving the SUV on multiple occasions before he was arrested, and testimony showing that Loften was driving the SUV in which the police discovered the cocaine with which he was charged for possessing. Loften was also linked to the money used to purchase drugs the day before, as marked bills from that transaction were found in his pocket.

The logical force of the evidence linking Loften to the cocaine in the container found in the SUV's center console makes Loften's connection to the controlled substance more than fortuitous. *See Evans*, 202 S.W.3d at 161. Given the evidence about the purpose for which the house was used and about the marked

33

bills, the jury could also reasonably infer that Loften intended to sell the cocaine that police found in the console of the SUV. We conclude that a rational trier of fact could have found beyond a reasonable doubt that Loften knowingly exercised care, custody, and control over the cocaine, and that he was guilty of the offense for which he was convicted. *See Jackson*, 443 U.S at 319. We overrule issue five and we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on November 24, 2014
Opinion Delivered October 14, 2015
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.