In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00003-CR
NO. 09-15-00004-CR
_____

BAKARI ABDUL BROWN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 253rd District Court
Liberty County, Texas
Trial Cause Nos. CR30879 and CR30880

**MEMORANDUM OPINION**

Bakari Abdul Brown appeals his convictions for possessing a controlled substance and unlawfully possessing a firearm. In his appeal, Brown argues that (1) the trial court abused its discretion by hearing Brown's motion for new trial without issuing a bench warrant to compel the State to present Brown for the hearing, (2) the evidence is insufficient to support the jury verdict convicting Brown of possessing a controlled substance, (3) the evidence is insufficient to

1

support the jury's verdict convicting Brown of illegally possessing a firearm, and (4) the trial court erred by failing to grant Brown's motion to suppress. *See* Tex. Health & Safety Code Ann. § 481.115(a), (d) (West 2010); Tex. Penal Code Ann. § 46.04(a) (West 2011). With respect to issue one, we hold that the trial court abused its discretion by hearing Brown's motion for new trial without issuing the bench warrant he requested that would have compelled the State to make him personally available for the hearing. However, we overrule issues two and three, in which Brown complains the evidence is insufficient to support the judgment. We also overrule issue four, in which Brown argues the trial court should have granted his motion to suppress. Nonetheless, in light of our ruling on issue one, we abate the appeal and remand the cause to the trial court to allow it to conduct an evidentiary hearing in which Brown is provided the opportunity to attend.

Background

In January 2014, based on a tip from a confidential informant, officers with the Liberty County Sheriff's Department obtained a warrant to search the home of Judith Daniels. The warrant allowed the police to search the home for controlled substances, including cocaine. The affidavit that police used to obtain the warrant was signed by a sheriff's department deputy. In his affidavit, the deputy claimed that the house where the search was to be conducted was being used by Daniels

2

and Brown to conceal controlled substances, which included cocaine. When the police arrived at Daniels' home to execute the warrant, the deputy saw Brown sitting in a car in the driveway. While some of the officers involved in the search were serving the search warrant on Daniels, the deputy briefly notified Brown of the impending search and then arrested Brown. Subsequently, the deputy informed Brown of his *Miranda*[1] rights. Brown waived his right to remain silent, and agreed to show the deputy where the police could find drugs in Daniels' home.

After Brown entered Daniels' house, Brown directed the deputy to one of the back bedrooms. While standing near a bed in one of the bedrooms, Brown nodded his head toward the bed, indicating to the deputy that the officers who were searching the bedroom should look under a blanket that was on top of the bed. Beneath the blanket, the officers recovered a cloth bag containing three plastic baggies. The baggies contained approximately 44 grams of a hard off-white substance. Through subsequent testing, the substance in the baggies was found to contain cocaine. Under the same blanket, the police also found a yellow bag, which contained a loaded handgun. In other parts of the house, the officers found ammunition for the gun, mail that was addressed to Brown at the address where the

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

search warrant was executed, digital scales, and cooking utensils. The cooking utensils contained a white-powdery residue.

In April 2014, a grand jury indicted Brown for possessing cocaine weighing between four and two hundred grams with the intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112(a), (d) (West 2010). The same grand jury indicted Brown for illegally possessing the handgun that the police recovered from Daniels' home. Tex. Penal Code Ann. § 46.04(a).

Prior to the trial, Brown asked the court to suppress evidence recovered during the search of Daniels' home. During the suppression hearing, Brown argued that the deputy who conducted the search promised him leniency in return for his agreement to assist in the search. According to Brown, the deputy told him before he agreed to assist in the search that he would "go to bat" for him, and Brown argues that the statement amounted to a promise of leniency. Brown argues that had the deputy not implied that he would not be charged with a crime if he helped them search the home, he would not have waived his *Miranda* rights. According to Brown, the deputy's representation of leniency was false, rendering all of the statements he made to the police thereafter involuntary.

Brown and the deputy who arrested Brown were the only two witnesses who testified during the hearing conducted on Brown's motion to suppress. During the

4

hearing, the court admitted a video taken by a camera inside the deputy's truck, which recorded the deputy and Brown talking about the search warrant. At the conclusion of the hearing, the trial court denied Brown's motion.

In December 2014, the case was tried before a jury. Although the trial court submitted a charge that allowed the jury to consider whether Brown was guilty of possession with intent to deliver, the jury failed to find him guilty on that issue, and instead, the jury found him guilty of simple possession of cocaine with an aggregate weight of between four and two hundred grams. The jury also found Brown guilty of unlawfully possessing the handgun recovered from Daniels' home. *See* Tex. Health & Safety Code Ann. § 481.115(a), (d); Tex. Penal Code Ann. § 46.04(a).

In the punishment phase of the trial, Brown pleaded true to the allegations that he had previously been convicted of several other felonies. After considering the punishment evidence, the jury assessed a life sentence on the possession of cocaine case and life sentence on the firearm case. *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2016).[2]

---

[2] We cite the current version of the statute, as the amendments do not affect the outcome of this case.

Following the trial, Brown filed motions for a new trial that are relevant to his convictions for possessing cocaine and unlawfully possessing a firearm. Each motion was supported by the affidavit of Jose Delgado. In his affidavits, Delgado stated that he was waiting in Daniels' home when Brown came to the house to take him to a store. According to Delgado's affidavits, before Brown arrived, Daniels[3] was with Delgado inside the home, and Daniels told him that she had some cocaine in a cloth bag that she had purchased from a person that Delgado identified by initials. Delgado's affidavits state that he asked Daniels to call Brown to come pick him up and take him to a store, and that after Daniels called Brown, he saw Daniels take the bag that she had in her hand to a rear bedroom. Delgado's affidavits indicate that when Brown came to Daniels' home, he saw Brown go toward the bedroom where Daniels was, but when he subsequently saw Brown leave, Brown did not have the cloth bag with him. According to Delgado's affidavits, he and Brown were sitting in Brown's truck in Daniels' driveway when the officers came to Daniels' home to conduct their search. While he was waiting for the officers to search Daniels' home, Delgado's affidavit indicates that he saw an officer leaving the home with a handgun, and that he knew the handgun belonged to Daniels.

---

[3] Brown called Daniels to testify during his trial. Daniels answered one question that indicates that she lives at the home where the police conducted the search. However, Daniels then invoked her Fifth Amendment right not to answer further questions. *See* U.S. Const. amend. V.

Delgado's affidavits also reflect that Delgado saw an officer with the cloth bag that he had seen Daniels with earlier in the house that day.

In his affidavits, Delgado infers that Brown was unaware that Delgado knew the handgun and cocaine that police found in the house belonged to Daniels. According to Delgado's affidavits, he informed Brown's father just before Christmas, but after Brown's trial, that he knew the cocaine and handgun that police found in Daniels' home belonged to Daniels.

Before ruling on Brown's motion, the trial court conducted a hearing. Both prior to and during the hearing, Brown's attorney asked the trial court to issue a bench warrant to allow Brown to leave jail and attend the hearing on his motion. Brown's attorney also requested that the court continue the hearing to a date when Brown could attend, but the trial court indicated that it did not believe that Brown needed to be present for the hearing. Brown's attorney also suggests that she wanted the hearing rescheduled so that she could call Delgado to testify about the matters he had addressed in his affidavits. The reporter's record from the hearing on the motion to suppress indicates that the trial court thought that Delgado's testimony would not show that the jury could not have found that the drugs and handgun were possessed jointly by Brown and Daniels. Therefore, because the trial court concluded that the jury could have convicted Brown even if Delgado had

7

testified, it appears the trial court considered the failure to present Delgado's testimony as harmless. At the conclusion of the hearing, the trial judge stated that he was "going to deny [Brown's] motion[,]" but also indicated that the court would not reduce its ruling to writing, which resulted in Brown's motion being denied by operation of law. *See* Tex. R. App. P. 21.8(a), (c) (deeming motions that are not ruled on by written order denied if not ruled on within 75 days of the date the defendant was sentenced).

## Motion to Suppress

Because the trial court ruled on Brown's motion to suppress before the trial commenced, we address his complaints about the suppression ruling first. According to Brown, the trial court erred by failing to suppress the statements that he made to the deputy who arrested him because the deputy promised, in return for Brown's assistance in searching the house, to help him avoid the consequences that might result if he helped the officers search Daniels' home. Brown claims that the deputy's representation that the deputy would "go to bat" for Brown amounted to a promise that the deputy failed to fulfill. Brown suggests that the deputy did not help him, but instead the deputy helped the State by providing the State with material testimony that was used to convince the jury that Brown had exercised care, custody, or control over the contraband found in Daniels' home. According to

8

Brown, the deputy's false promise to him made it impossible for him to intelligently decide whether it was in his best interest to cooperate with the deputy's request that he assist in the search. Brown contends that all of the evidence uncovered during the search of Daniels' home is traceable to the decision he made to assist the police in searching Daniels' home.

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion, using a bifurcated standard. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). In reviewing the suppression ruling, we give almost total deference to the trial court's findings of historical fact, when its findings are supported by the record, and we also give the trial court almost total deference on any mixed questions of law and fact when its resolution of those matters turned on evaluating the credibility or demeanor of the witnesses who testified during the suppression hearing. *Id*. However, we "review *de novo* 'mixed questions of law and fact' that do not depend upon credibility and demeanor." *Id*. (quoting *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)); *Guzman*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The arguments Brown advanced in support of his motion to suppress required the trial court to decide whether Brown freely decided to assist the police in searching Daniels' home. As such, the trial court resolved a mixed

9

question of law and fact, as the trial court's decision turned on the evaluation and credibility of the witnesses who testified in the suppression hearing. *See Amador,* 221 S.W.3d at 673*; Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). Therefore, we review the trial court's ruling by giving the trial court almost total deference with respect to the ruling that is at issue on appeal. *Amador*, 221 S.W.3d at 673.

During the hearing, the parties introduced evidence explaining the circumstances that led to Brown's decision to assist the officers in their search of Daniels' home. During the hearing, the trial judge also reviewed a video recording, and the recording captured Brown's conversation with the deputy about the impending search of Daniels' home. The video shows that Brown agreed to assist the officers with the search only after the deputy informed Brown that any statements that he gave to the police could be used against him. After Brown agreed to assist the deputy, Brown went with the deputy and entered Daniels' home. According to the deputy, who testified during the hearing, Brown led him to the home's rear bedroom, where Brown nodded in a manner indicating that the officers should search the bed. Under a blanket on the bed, the police discovered one yellow bag. The yellow bag contained a loaded handgun. Under the same

10

blanket, the police found a cloth bag. The cloth bag contained three baggies, which contained an off-white substance that was later found through testing to contain cocaine.

In the suppression hearing, the State had the burden of proving that Brown's statements were made voluntarily. *See Gentry v. State,* 770 S.W.2d 780, 789 (Tex. Crim. App. 1988). Article 38.21 of the Texas Code of Criminal Procedure provides that the statements of a person accused of a crime "may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion[.]" Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005). In determining whether a person made statements voluntarily, trial courts are entitled to consider the circumstances under which the defendant made the statements that are at issue in the appeal. *See Delao v. State,* 235 S.W.3d 235, 239 (Tex. Crim. App. 2007). In this case, the evidence introduced during the suppression hearing shows that the deputy warned Brown that his statements could be used against him before he made the statements at issue in the appeal. Additionally, the video recording does not show that the deputy told Brown that he had control over what the district attorney might charge Brown with if he assisted them in the search, and it does not show that the deputy told Brown he would not

be charged. Instead, the recording shows the deputy told Brown that he could not tell the district attorney to drop any charges.

Having carefully reviewed the evidence from the suppression hearing, we conclude that the trial court was authorized based on the evidence that was before it to find that Brown made a voluntary decision to assist the police in conducting the search of Daniels' home. *See Delao*, 235 S.W.3d at 240 (rejecting the argument that misrepresentations made by the investigating officer along with other factors revealed the evidence lacked support for the appellant's claim that the statements he made to the officer rendered them involuntary); *Frank v. State,* 183 S.W.3d 63, 75 (Tex. App.—Fort Worth 2005, pet. ref'd) (rejecting the defendant's claim that his statement had been involuntary based, in part, on the fact that the statement was made after the defendant had been informed of his *Miranda* rights). Under the circumstances that led to Brown's arrest, the statement the deputy made to Brown that he would "go to bat" for him amounted to nothing more than a promise to inform the district attorney that Brown had cooperated in the search of Daniels' home. *See Muniz v. State,* 851 S.W.2d 238, 254 (Tex. Crim. App. 1993) (concluding that the defendant, following a suppression ruling denying his motion to suppress, had failed "to demonstrate that the party in authority positively and unequivocally promised leniency in return for a confession"). Based on the

12

evidence from the suppression hearing, and the standard of review that applies to mixed questions of law and fact, the trial court's ruling is supported by the evidence that was admitted during the suppression hearing. *See Amador*, 221 S.W.3d at 673; *Muniz*, 851 S.W.2d at 253. We overrule issue four.

Sufficiency of Evidence

In issues two and three, Brown contends the evidence is insufficient to support his convictions for possessing the cocaine and the handgun discovered in the search of Daniels' home. In his brief, Brown argues that the circumstantial evidence linking him with the cocaine and handgun was insufficient to support the jury's conclusion that he possessed those items. In support of the arguments that Brown makes to support issues two and three, Brown points to the testimony of Vernice Beasley, the grandmother of Brown's daughter, who testified that on the date Daniels' house was searched, Brown was living in her apartment. According to Beasley, Brown started living at the apartment she rented in October 2013, Brown kept his clothes at her apartment, Brown received mail there, and Brown paid the apartment's cable bill. A letter, dated February 10, 2014, and addressed to Brown at the address for the apartment that Beasley rented, was admitted in the hearing. The letter indicates that the account was past due, and it shows Brown as the accountholder for the account.

13

Brown also notes that the evidence did not show that he had an exclusive right of control over the contraband that police found in Daniels' home. The evidence from the hearing shows that the home belonged to Daniels. In the hearing, Daniels testified that she still lives in the home that police searched, but she then invoked her Fifth Amendment rights and declined to answer any further questions. Brown suggests that the remaining evidence linking him to the drugs and the handgun recovered from the home was insufficient to prove that he had possessed those items. We note that Brown does argue that the evidence was insufficient to prove the baggies contained cocaine, or to prove that the contents in the baggies weighed approximately 44 grams. With respect to Brown's firearm offense, we also note that Brown does not argue that the evidence was insufficient to show that he had previously been convicted of a felony, or that he had been released from confinement or the conditions of supervision more than five years before the police searched Daniels' home. *See* Tex. Penal Code Ann. § 46.04(a)(1) (West 2011).

In his appeal, Brown argues that the evidence was insufficient to support the jury's conclusion that he possessed the cocaine and the handgun that were recovered from Daniels' home. Possession is defined by the Penal Code as "actual care, custody, control, or management." Tex. Penal Code Ann. § 1.07(a)(39) (West

14

2011). In a sufficiency review, we review the evidence admitted during the defendant's trial in the light that most favors the jury's verdict. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). In reviewing the evidence, we do not substitute our judgment for the factfinder's; instead, we give deference to the jury to exercise its responsibility to fairly resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). In conducting a sufficiency review, we are to uphold the jury's verdict "unless a reasonable juror must have had a reasonable doubt as to at least one of the elements of the offense." *Runningwolf v. State*, 360 S.W.3d 490, 494 (Tex. Crim. App. 2012).

When the evidence does not show that the defendant had an exclusive right to possess the place where the police found contraband, the State is required to demonstrate that either direct or circumstantial evidence affirmatively links the defendant to the contraband. *See Smith v. State,* 176 S.W.3d 907, 916 (Tex. App.—Dallas 2005, pet ref'd); *Brown v. State,* 911 S.W.2d 744, 748 (Tex. Crim. App. 1995); *Gabriel v. State,* 842 S.W.2d 328, 331 (Tex. App.—Dallas 1992), *aff'd,* 900 S.W.2d 721 (Tex. Crim. App. 1995). Nevertheless, the State is not required to prove that the defendant had an exclusive right of possession to link

15

him to contraband found in a location that is not subject to the defendant's exclusive right to control. *See State v. Derrow,* 981 S.W.2d 776, 779 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd); *McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). In evaluating whether sufficient evidence exists to support a jury's conclusion that a defendant possessed contraband found in locations not under the defendant's exclusive control, courts examine a number of factors, which include:

- whether the defendant was present when the search was conducted,

- whether the contraband was in plain view,

- whether the defendant was in proximity to and had access to the contraband,

- whether the defendant was under the influence of drugs when arrested,

- whether the defendant possessed other contraband or narcotics when arrested,

- whether the defendant made incriminating statements when arrested,

- whether the defendant attempted to flee,

- whether the defendant made furtive gestures,

- whether there was an odor of contraband,

- whether other contraband or drug paraphernalia were present,

16

- whether the defendant owned or had the right to possess the place where the drugs were found,

- whether the place where the drugs were found was enclosed,

- whether the defendant was found with a large amount of cash, and

- whether the conduct of the defendant indicated a consciousness of guilt.

*Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *see also Nixon v. State,* 928 S.W.2d 212, 215 (Tex. App.—Beaumont 1996, no pet.). Nonetheless, the State is not required to prove that all of these links are present; instead, the "number of ... links is not as important as the logical force that they collectively create." *Hubert v. State,* 312 S.W.3d 687, 691 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *see also Jones v. State,* 338 S.W.3d 725, 742 (Tex. App.— Houston [1st Dist.] 2011, *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012). Additionally, evidence that links a defendant to contraband can be direct or circumstantial, but the logical force of the collective links must show the defendant's connection to the contraband was not merely fortuitous. *See Evans,* 202 S.W.3d at 161; *Smith,* 176 S.W.3d at 916. In evaluating whether sufficient evidence links the defendant to the contraband, "[t]he absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present." *James v. State,* 264 S.W.3d 215, 219 (Tex. App.—

17

Houston [1st Dist.] 2008, pet. ref'd); *see also Williams v. State,* 313 S.W.3d 393, 398 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Finally, the evidence about the links need not exclude every theoretically reasonable innocent explanation that might undercut the jury's decision that tied the defendant to the contraband. *See Brown,* 911 S.W.2d at 748.

In Brown's case, the evidence shows that even before any contraband was found, he began bargaining with the police in an effort to mitigate what he knew they would likely discover during the impending search. The circumstantial evidence shows that he knew where the contraband would be found inside Daniels' home, as he led the police to the room where the cocaine and handgun was recovered, and nodded at the bed indicating that the police should focus on the bed in their search. After the officer found the bag that contained the cocaine and the bag that contained the handgun under the blanket that was on top of bed, the deputy asked Brown if any other drugs were in the home. Brown responded: "That's it[.]" The evidence allowed the jury to conclude that Brown not only knew where the contraband would be found, but that he knew that no other illegal drugs were being kept there. The evidence from the trial also shows that Brown told the officers that no additional guns were in the home. The evidence allowed the jury to conclude that Brown knew where the contraband was being hidden in the home,

18

indicating that his connection to the contraband was more than merely fortuitous. Additionally, the officers who searched Daniels' home found mail addressed to Brown at the address of the house where the search occurred. The testimony of the deputy in the trial indicates that objects found in another bedroom indicated to him that Daniels used a bedroom other than the one where police found the contraband. These facts offer additional circumstantial evidence that tend to link Brown with the bedroom where the contraband was found.

In summary, the evidence linking Brown to the contraband found in the bedroom of Daniels' home was largely circumstantial. Nevertheless, the logical force of the collective links show that Brown's connection to the contraband was not merely fortuitous. As the factfinder, the jury was entitled to infer from the evidence that Brown had used the bedroom in Daniels' home as a place to store the cocaine and the firearm that they found there, and to conclude that he had a right of control or management over the items that the police recovered there. *See Johnson v. State,* 571 S.W.2d 170, 173 (Tex. Crim. App. 1978). We hold that the evidence authorized the jury to reasonably find that Brown knowingly possessed the cocaine and the handgun that the police found in the bedroom of Daniels' home. *See Williams,* 235 S.W.3d at 750. We further hold that the evidence contains sufficient affirmative links to establish that Brown was guilty of possession of cocaine and

19

illegal possession of a firearm. *See Jackson,* 443 U.S. at 319; *see also Jones,* 338 S.W.3d at 743.

Motion for New Trial

Following his trial, Brown filed motions for new trial in both of the trial court cause numbers that are on appeal. In his motions, Brown asserted he had discovered new evidence since his trial that was relevant and that tended to exonerate him. Brown supported both motions with an affidavit executed by Jose Delgado. On appeal, Brown contends the trial court abused its discretion by denying his request to personally attend the hearing the trial court held on his motions, and abused its discretion by failing to conduct an evidentiary hearing, based on his argument that Delgado's affidavits raised matters that could not be determined solely from the information in Delgado's affidavits. The trial court indicated in the hearing that it considered Brown's presence to be unnecessary. In its brief, the State failed to address Brown's claim that the trial court abused its discretion by failing to grant Brown's request for a bench warrant that would have required the State to bring Brown to the hearing.

We review challenges to a trial court's ruling on a motion for new trial using an abuse-of-discretion standard. *See Webb v. State,* 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). Defendants in felony prosecutions have a statutory right to be

20

present at their trials. Tex. Code Crim. Proc. Ann. art. 33.03 (West 2006); *See Routier v. State,* 112 S.W.3d 554, 575 (Tex. Crim. App. 2003). This right includes the right to be present at a hearing on a motion for new trial. *See Phillips v. State,* 288 S.W.2d 775, 776 (Tex. Crim. App. 1956); *see also Coons v. State,* 758 S.W.2d 330, 339 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). We hold the trial court abused its discretion by conducting the hearing on Brown's motions for new trial without requiring the State to bring Brown to the hearing.

Nonetheless, we must also determine if Brown was harmed because he was not allowed to attend the hearing. *See* Tex. Code Crim. Proc. Ann. art. 33.03. In evaluating harm, we must determine if the defendant's "substantial rights" were affected by the trial court's violation of article 33.03. *Id.*; *Tracy v. State,* 14 S.W.3d 820, 827 (Tex. App.—Dallas 2000, pet. ref'd) (applying harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure to a violation of article 33.03). In Brown's case, Delgado's affidavits, which accompanied Brown's motions for new trial, suggest that Brown was unaware that Delgado could have testified that Daniels was the person that owned the handgun and cocaine that were recovered in the search of Daniels' home. When assessing harm, we consider whether Brown could have provided relevant testimony that the court would have been required to

21

consider in deciding Brown's motion. *See Mares v. State,* 571 S.W.2d 303, 307 (Tex. Crim. App. 1978).

In this case, Brown was unavailable to explain that he was unaware before his trial that Delgado could have tied the handgun and the cocaine to Daniels, even though the evidence at trial shows that prior to his arrest, he knew that Delgado had been in Daniels' home. *Id.* As questions regarding Brown's knowledge about what Delgado knew were material to whether Delgado's affidavit constituted newly discovered evidence, we are unable to conclude that Brown was not harmed by the trial court's decision refusing to grant Brown's request asking the court to issue a bench warrant so that he could attend the hearing. *Id; see* Tex. Code Crim. Proc. Ann. art. 40.001 (West 2006) (granting a defendant a new trial when favorable material evidence is discovered after trial); *see also Wallace v. State,* 106 S.W.3d 103, 108 (Tex. Crim. App. 2003) (explaining that a defendant must be granted a new trial if the newly discovered evidence was not known to him at the time of trial; if the defendant's failure to discover the evidence was not from his lack of due diligence; if the new evidence would be admissible and not cumulative, corroborative, collateral, or impeaching; and if the new evidence is probably true and would probably bring about a different trial result).

We abate the appeal and remand both of Brown's cases to the trial court to allow it to conduct an evidentiary hearing on Brown's motion for new trial. The trial court is directed to allow Brown to attend the hearing, and following the hearing, to cause to be filed in this Court a supplemental clerk's record that contains the trial court's order on Brown's motions for new trial and a reporter's record that reports the hearing. We direct the court to conduct the hearing on Brown's motion within ninety days of the Court's opinion.[4]

ABATED.

_____
HOLLIS HORTON
Justice

Submitted on January 13, 2016
Opinion Delivered October 5, 2016
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

_____

[4] In light of our resolution of Brown's motion for new trial hearing, we need not address Brown's argument that the trial court erred in failing to conduct an evidentiary hearing on his motion. *See* Tex. R. App. P. 47.1.

23